# CHARLESTON.

## CARPER *v.* HAWKINS.

### March 1, 1875.

1875.
January Term.

1. A cause may be re-heard upon a petition presented before the term has passed in which the final decree was pronounced, but not afterwards, except by bill of review.

8 291
37 35

8 291
51 563
52 657

2. In a suit by one partner against another for the settlement of a partnership and partnership accounts, after dissolution, where it appears that a large amount of the partnership debts and liabilities are unpaid, and for some of which there are judgments against the partners, and that one of the partners has collected more of the partnership funds than the other, ordinarily it is error for the court to decree personally for the money so collected, or any part thereof, in favor of one partner against the other, until the payment of the partnership debts are first provided for.

3. Generally, each partner has the right to apply any of the partnership moneys in his hands to the satisfaction of the partnership debts. But the court may, in a proper case, direct a partner who has partnership moneys in his hands to pay the same into court to be applied to the payment of the debts, and in his relief or otherwise, as may be just.

4. The partnership moneys and assets, or a sufficient amount thereof for the purpose, should be first applied to the payment of the partnership debts.

5. Where a bill is filed by one partner against the other, after dissolution, for a settlement of the partnership and partnership accounts, and an order of reference is made in the cause to a commissioner for that purpose, and the commissioner makes his report, to which no exceptions are filed, and the court confirms the report and makes a personal decree in favor of one partner against the other for the payment of money, it is competent, upon a petition for a re-hearing, filed by the partner against whom such decree is made, during the same term, upon a proper case made out, for the court to set aside such decree and recommit the report for fur-

ther account, especially where the court sees that justice and equity, as between the parties, requires such proceedings.

6. As a matter of practice, a special receiver, to whom money is directed to be paid by a decree in a cause, should be required to give bond with approved personal security, with proper conditions, in a penalty fixed by the court, before he is authorized to receive such money, or any part thereof.

Appeal and *supersedeas* from two decrees of the circuit court of Kanawha county, granted on the petition of William N. Hawkins, the defendant below. The plaintiff below was James P. Carper. The other facts appear in the opinion of the Court.

The Hon. Joseph Smith, judge of said circuit court, presided at the hearing below.

*Thomas B. Swann* and *John A. Warth*, for the appellant.

*William A. Quarrier* and *J. H. Connell*, for the appellee.

HAYMOND, PRESIDENT:

The plaintiff brought this suit against the defendant on the 18th day of March, 1873, and he filed his bill therein at April rules, 1873. The plaintiff alleges in his bill that in November, 1870, he and defendant entered into co-partnership under the firm name of Hawkins & Carper for the purpose of carrying on the painting business in the city of Charleston, on the following terms and conditions, viz: They should work together, as partners, under the firm name of Hawkins & Carper, and divide equally the profits arising from said business; that in accordance with the agreement of partnership, they continued to work together until sometime in May, 1872, at which time the partnership was dissolved, and notice of the dissolution was at that time published in the "Kanawha Daily" a newspaper published in said city. Plaintiff avers that during the partnership there were various contracts for painting made and performed,

and some contracts partly performed under and by virtue of the said partnership, and the price and consideration for many of the contracts is still due and owing to the firm of Hawkins & Carper; that various contracts of indebtedness for painting material were made in the firm name, which indebtedness has not yet been paid off and discharged but still stands against the firm. The plaintiff also alleges that he and defendant never made any settlement between themselves during the time they worked together as partners nor since they dissolved partnership. After these allegations the bill prays that said Hawkins be made defendant thereto and required to answer the same upon oath, and that he therein particularly state how much money he has collected, since the dissolution of the partnership, &c.

Subsequently, such proceedings were had in the cause as that on the 28th day of May, 1873, the cause came on to be heard upon the "bill and the decree *nisi* against the defendant, and was argued by counsel; whereupon the court ordered that the same be referred to C. P. Snyder, who was appointed a special commissioner for that purpose, to take, state, and report an account between the said co-partners, James P. Carper and Wm. N. Hawkins, showing,

1st. The amount of debts now due said firm and by whom due.

2d. The amount of the liabilities and indebtedness of said firm and to whom due.

3d. The amount of the funds belonging to the said firm collected by each partner and when collected.

4th. The amount of debts due by said firm, which have been paid out of the funds of the firm, and by whom paid, and to whom paid, and when.

5th. And what amount, if any, each partner is now entitled to."

The decree then provides for notice by publication and appoints C. P. Snyder receiver in the cause, with sole and exclusive power and authority to collect, settle, and

adjust all claims due to the said late firm, and with power and authority to settle and adjust, and pay off all the debts due and owing by said firm, and exclusive power and authority is given said Snyder to take possession of all the books, and papers, and accounts of the firm with authority to examine either the plaintiff or defendant in regard to matters connected with the partnership. But Snyder is not to take possession of the books, &c., until he shall have first given bond with approved security before the clerk of the court in the sum of $2,0C0 for the due and proper performance of his duty as receiver under the decree.

Afterwards on the 10th day of November, 1873 the cause came on to be further heard upon the bill and proceedings theretofore had therein and upon the report of commissioner Snyder, filed on the first day of November, 1873 to which there were no exceptions filed. And the court confirmed the report of the commissioner and in its decree says "And it appearing from said report that Wm. N. Hawkins has received in excess of his portion of the partnership funds the sum of $1,227.98 for which amount he the said Wm. N. Hawkins, is justly indebted to the complainant, it is therefore adjudged, ordered and decreed that the said Wm. N. Hawkins do pay to the complainant James P. Carper the sum of $1,227.-98 with legal interest thereon at the rate of six per cent. per annum from the 1st day of November, 1873 until paid and the costs of this suit, including $20 for an attorney's fee. And the court doth further adjudge, order and decree that unless the said Wm. N. Hawkins shall pay the same within ten days from the rising of this court, that Joseph Ruffner who is hereby appointed a special commissioner for that purpose do proceed to take, state, and report an account:

1st. Of the real estate owned by the defendant in Kanaawha county, West Virginia, or any interest, legal or equitable in the same.

2d. What judgments or other liens, if any there are against the real estate owned by said defendant with their priorities.

4th. Whether the defendant has any personal estate out of which the said $1,227.98 can be satisfied, and make a report to the next term of this Court."

The commissioner in his report ascertains the aggregate amount of the debts due the firm at $1,120.38 made up as follows, viz: From King & Simpson, $113.28; J. B. Walker, $151.10; Gilliland & Anderson, $144; Dr. J. P. Hale, for extra work on Hale House, $712. He also reports the debts and liabilities of the firm to be in the aggregate $924,43, made up of several items among which is a judgment against the firm rendered by the county court of said county on the 28th of April, 1873 amounting, with interest, to $525.12. He also reports the aggregate amount of funds belonging to the firm, collected by defendant to be in the aggregate $4,759.46 and the amount collected by plaintiff to be $3,469.12; but does not state in his report from whom any part of the moneys so collected were received or when they were received. He also reports that defendant paid debts of the firm to the amount of $1,422.48, and that plaintiff paid debts of the firm to the amount of $2,588.01, but he does not report when any of the debts were paid or to whom paid. He also ascertains that of the firm moneys collected by defendant there remains in his hands $3,337.08 unaccounted for, and that of the firm moneys collected by plaintiff there remains in his hands $881.11. The whole of the commissioner's report is grounded on entries in a book presented before him by plaintiff claimed to be the book containing the partnership entries—neither plaintiff or defendant appear to have been examined on oath by the commissioner touching any matter connected with the settlement of the account, or for any purpose. The commissioner in his report states that both plaintiff and defendant appeared before him on the day he commenced

the settlement of the account, but the taking of the account was continued for several days, and whether the defendant was present on any other day than the commencement does not distinctly appear by the report.

After the decree, and on the 22d day of November, 1873, during the term of the court at which said decree was rendered the defendant appeared in court and filed a petition praying, for the reasons therein stated, that said decree be set aside and the said report of the commissioner be recommitted to said commissioner, &c.; that the said receiver be required to collect the assetts and pay the debts of the firm, &c. In this petition defendant alleges that he has been surprised and is in danger of being ruined by said decree. He avers that his understanding was that the commissioner was making an account of the firm matters as between the firm and the world; that as receiver he was to collect and pay off the debts, and that no account was to be taken or stated, as between the partners, until after this was done; that he was at the office of the commissioner several times for the purpose of adjusting matters connected with the partnership, but he does not remember to have at any time met plaintiff there; that he never heard of the report filed until after the decree was entered, and that he is advised that the decree was never shown to his counsel before it was presented to the court; that he employed Thos. B. Swann, an attorney of the court, to attend to the suit for him, and that the attention of his counsel was not invited to the fact that the commissioner had filed his report, although it was well known to the counsel of plaintiff that Mr. Swann was his counsel in the suit, and employed as soon as the suit was brought; that his counsel informed him he was present in court every minute when the chancery docket was called during the term and the cause was not submitted in the regular call of the docket, and that he don't know when it was submitted; that he had not been informed that the commissioner had concluded his

report ; that the report is erroneous in many particulars, and was made without any evidence; that the commissioner did not examine him as a witness, and that plaintiff was not examined, and neither of the parties furnished any vouchers as evidence before the commissioner ; that the pretended book of accounts filed by the commissioner with his report, as the foundation thereof, is not a book belonging to the firm, and does not contain a correct statement of the business matters of the firm, and is not a partnership book ; that he never saw said book until after it was filed with the commissioner, and never was advised that it was claimed by any person that it was other than a private book of plaintiff, and never understood that the book was filed as evidence in the cause, and supposed plaintiff filed the book only to show his pretentions in the cause, which he was bound to prove by evidence ; that he never made an entry in said book ; that plaintiff collected large sums of money not charged to him in said book ; that a large number of partnership credits have not been paid and a part thereof are still in dispute and contested, and many of the claims charged to him in the report are in this condition in whole or in part ; that a number of the claims charged to him in the report were, either in whole or in part, expended in the purchase of paints, oils, &c., for the use of the firm. He insists that it was error for the commissioner to attempt to settle the accounts between the partners, before the debts of the firm were first paid ; that if he is forced to settle with and pay over money to plaintiff, the money so paid over may be a total loss to him, because plaintiff has no visible means out of which his part of the partnership debts can be made, while defendant is possessed of a large amount of valuable real estate, upon which a portion of the creditors of the firm now have judgment liens to a large amount, and have the power to compel defendant to pay the entire partnership debts outstanding ; that many of the matters charg-

38

ed to him in the report are either wholly wrong or subject to deductions for over charges; that he has paid debts to a large amount not credited to him in the report for which he has proper vouchers; that he expected the commissioner to report to the court as receiver, but not as commissioner, upon the condition of accounts between the parties, until the partnership liabilities were settled and paid; that if the present decree stands the work of settlement will have to be done over again, when the partnership is finally wound up, and it was error to require defendant to pay over to complainant until defendant is relieved from responsibility for debts against the firm; that the $144 reported as a debt due the firm against Gilliland & Anderson has been paid by them to plaintiff, as he is advised, as per the affidavit of Anderson; that he never knew until the 11th instant this money had been collected by plaintiff; that from the 25th day of September, 1873, till after the sitting of the court his attention was occupied and directed from his business by reason of sickness and death in his family; that upon a just statement of accounts he is in no wise indebted to plaintiff. This petition is verified by affidavit.

Afterwards, and during the same term of the court, plaintiff appeared and filed his answer, verified by affidavit, in which he substantially denies all the allegations of the petition, and claims the full amount of said decree, and files with his answer several affidavits therein referred to.

Defendant filed to said answer what purports to be a special replication, but is, in fact, a general replication; and defendant also files several affidavits in support of his allegations.

The affidavit of Anderson proves that the said claim of $144.50, claimed to be due from Gilliland & Anderson to the said firm has been fully paid to plaintiff, and that the payment was made 15th of July, 1872.

Fulks says, in his affidavit, that he paid plaintiff for work done by said firm $209, in work done for plaintiff on his house.

There are affidavits of other persons proving payments to plaintiff not charged to him, amounting to considerable.

There are also affidavits tending strongly to prove that a considerable amount of the Hale debt reported as due said firm has been paid, or a large part of it; that plaintiff collected considerable sums of money, for which he did not account to the commissioner, and that the debts due the firm are largely overstated in said report.

Two affidavits of the commissioner are filed by plaintiff, in which he states, substantially, that his report is made from vouchers, and the firm book, which both parties admitted to be the firm book, containing correct entries of their private and partnership accounts; that defendant remarked, when before him, that he supposed that he would be from $300 to $500 loser by reason of not keeping accounts himself, and at the same time he claimed that there were some credits which he was entitled to which were not on the book, but that he did not produce vouchers or other evidence in proof of credits so claimed, although informed several times by the commissioner to do so.

The affidavit of John A. Warth sustains defendant's allegations in his petition as to the sickness and death of defendant's son, who died 2d October, 1873, and was taken sick in latter part of September; and that defendant left his business in Charleston to give attention to his sick son, and that defendant, for several weeks after the death of his son, was detained at his residence by the ill health of his wife and daughter, caused, as supposed, by the death of defendant's said son.

The affidavit of Thomas B. Swann sustains the allegations of defendant in his petition as to his being defendant's attorney in the cause, and in all other respects.

On the 16th day of December, 1873, it appears that defendant filed his said petition to set aside the said decree; and thereupon the plaintiff (Carper) asked leave to file his answer to the petition, and it was ordered to be filed, accompanied by the affidavits therein mentioned; and thereupon, on motion of petitioner by his counsel, said petition and answer, replication to said answer, with affidavits, &c., were set down for argument, and, on argument, the court determined and held that petitioner was not entitled to the relief prayed for, and the court decreed that the petition be dismissed, without costs; "but the court being of impression, from an examination of the cause, that the decree entered on a former day of the court ought to be modified, and the sum of $1,227.98, less $141.30 paid by Mrs. B. H. Smith to Bell & Oaks for paints, and also the sum of $209 paid by J. Fulks to J. P. Carper, (plaintiff,) which two sums, making $350, the plaintiff releases, leaving said decree $877.68, instead of $1,227.98."

And the court, in same decree, further ordered, &c., that the defendant pay to said C. P. Snyder, instead of the plaintiff, as provided by former decree, who was appointed receiver in the cause by a former decree, the said sum of $877.68, with legal interest thereon from the 1st day of November, 1873, till paid—the receiver to retain the same in his hands until further order of the court; and on failure of said William N. Hawkins to pay the same within sixty days, instead of ten days, as provided by a former decree, from the rising of the court, that Joel Ruffner proceed to take, state and report an account, as directed by said former decree.

The plaintiff's bill does not allege that the defendant was in any way indebted to him on account of said partnership.

The material allegations of the bill were taken for confessed by the failure to answer. But as no debt was alleged to be due from defendant to plaintiff in the bill

no debt was confessed by the failure to answer. In fact

the settlement of the partnership accounts, &c., under the
allegations of the bill, could be quite as well settled
without as with an answer, by defendant, though it would
have been better perhaps for the defendant to have filed
an answer. It is best in all such cases for an answer to
be filed. It does not appear that Snyder, the receiver,
ever gave bond and security as receiver, or that he ever
made any report to the court as receiver in the case prior
to the last decree made in the cause. The petition filed
by the defendant after the decree of confirmation of the
report, must be regarded as a petition for a rehearing of
the cause. In the case of *Hodges v. Davis* 4 H. & M. 400 it
was *held* that "a cause may be reheard upon a petition pre-
sented before the term has passed in which the final de-
cree was pronounced, but not afterwards, except by bill
of review." In the case of *Laidley v. Merrifield* 7 Leigh
353 and 354 Judge Cabell says "a bill of review,
strictly speaking, is a proceeding to correct a final de-
cree, in the same court, for error apparent on the face of
the decree, or on account of new evidence discovered
since the final decree. The decree being final, the bill
of review is not regarded as a part of the cause in which
the decree was rendered, but as a new suit having for its
object the correction of the decree in the former suit.
But when a decree is only interlocutory, but liable to
the same objections, the party injured must seek his re-
dress, not by a bill of review, as such but, by petition, or
supplemental bill in the nature of a bill of review.
Such petition or supplemental bill is regarded as a part
of the very cause, the decree in which is sought to be
corrected, &c. Judge Brockenbrough in the same case,
on page 356, says "courts of equity regard substance
rather than form, and may, I think, so mould the pro-
ceedings as to attain the real justice of the case." As
the petition was filed in this case during the same
term at which the decree was made, it is unnecessary
to determine whether the decree was final or inter-

locutory, only, as in either case the remedy under the circumstances here, is by petition for a rehearing or supplemental bill in the nature of a bill of review. It would seem that when a decree is only interlocutory the court may, ordinarily, on its own motion, reform, modify or correct the same, and it may do the same thing on petition for rehearing. This power is to be exercised in the discretion of the court, but of course the discretion exercised must be a sound discretion. The petition alleges, substantially, in this case, that the court erred in rendering the personal decree in favor of the plaintiff against the defendant to which I have referred. It also alleges that the plaintiff collected of the partnership moneys a considerable amount for which he did not account to the commissioner, and that the defendant is charged by the commissioner with moneys and social assets erroneously and unjustly, to a large amount ; that the report was made without evidence, &c. The petitioner also claims that great injustice is done him by the report and decree of confirmation and sets up an excuse to-wit : the sickness of his family and death of his son for not being able to attend to the case before the commissioner and as to his arrival, &c., before referred to. I have not recited all the affidavits filed in the cause with the petition and answer thereto. I have not done so because to do so would occupy too much space in this opinion. It was error for the court to render the personal decree of the 10th of November, 1873 in favor of the plaintiff against the defendant for $1.227.98 with interest, &c., and this error appears upon the face of the proceedings in the cause. At the time this decree was rendered the debts against the partnership were not settled or paid, and a large amount of these debts were in the shape of judgments against plaintiff and defendant. The defendant had the right as against plaintiff to apply any amount of the social moneys, in his hands to the discharge of the social debts for which he was liable so far as necessary. And to compel him to pay the same

to the plaintiff who was depriving him of that right and privilege, necessary, so far as appears by the proceedings and evidence, for his protection. The social assets should be applied first to the payment of the social debts. The payment of the social debts should be provided for, generally, before a personal decree in favor of one partner against another, unless some good reason is shown for a different course. True, when it appears clearly, by answer or perhaps otherwise, that one partner has assets belonging to the firm the court may, and will, in proper cases, direct the same to be paid into court to be properly applied by the court or under its direction and control. It appears that plaintiff collected and has in his hands social moneys which he never paid out, as well as the defendant; and it is laid down in Collyer on Partnership, sec. 302 that "one partner, whether plaintiff or defendant, may receive partnership money and effects, and insist on not paying in the amount, unless all the other partners will pay in what they have in their hands ; and it has been laid down by Lord Eldon, that if a partner receives money belonging to the firm, and admitting that he has received it, insists that there is a balance in his favor, there is no pretence for making him pay it in." But see also same author as to paying in money: sections 303, 304, 305, 306, &c. The affidavits filed in the cause were not excepted to, or objected to being read by either party, and they were evidently read by the circuit court and will be considered here. It was error for the court to dismiss the defendant's petition upon the ground that he was entitled to no relief. But notwithstanding the dismissal of the petition the court in accordance with its *impression* modified and changed the decree in amount to the extent of $350.30 by changing it from $1,227.98 with interest to $877.68. A large part of this reduction was for money plaintiff collected or received from Fulks belonging to the firm and which he failed to account for before the commissioner, though he must have known it. And the court

1875.
January Term.

Carper
v.
Hawkins.

not only reduced the amount of the decree, but changed the whole character of the decree by directing that the amount be paid to the special receiver Snyder instead of plaintiff. But the court not only directed the money to be paid to the special receiver Snyder, but directed him to retain it in his hands after receiving it until further order of the court. As has been stated for over $500 of the indebtedness of the firm there was judgment. This judgment might be enforced at any time by *fieri facias* against the personal property and estate of the defendant as well as the plaintiff and the money, or so much as was necessary, should have been applyed at once to the payment of the social debts in relief of the defendant, otherwise he might pay it to the receiver and still be compelled to pay to the judgment creditors of the firm by process of execution. This would be inequitable and oppressive upon the defendant, especially as it appears from the evidence that there are but little if any firm assets which can or probably will be realized out of which he might be reimbursed. As a matter of practice the special receiver should be required to give bond with good personal security before he is authorized to receive any money.

The decree of the 28th day of May, 1863, appointing said Snyder special receiver in the cause for the purposes, and with the powers specified in that decree, requires him to give bond, with approved security, in the penalty of $2,000, "for the due performance of his duty under this decree." This condition, perhaps, would not cover the money decreed to be paid to him by the said decree of the 16th day of December, 1873. The court, at the conclusion of its decree, last aforesaid, and the decree of the 10th day of November, 1873, by its direction therein, seems to contemplate that if defendant failed to pay the money within the period therein stated, that the plaintiff's individual, real or personal estate, or all should be subjected to sale in this proceeding by decree of sale to pay the same. This would be irregular. Not-

withstanding a decree rendered against the defendant in this cause would constitute a lien against the real estate of the plaintiff, it would not constitute a lien upon his personal estate, and it would be irregular and unauthorized by the practice in such cases, to render a personal decree for the payment of money against the defendant, in a case of the character of this and then in the same cause, if the money was not paid by a fixed day to proceed therein in the same cause to decree the sale of the defendant's realty or personalty to pay the money. The defendant may have been guilty of some laches in not producing his vouchers and evidence before the commissioner ; but still the evidence tends strongly to show that the cause for it was the sickness and death of a son as well as the sickness of his wife and daughter a great part of the time the cause was before the commissioner, and, especially, from the latter part of September till, perhaps, in November, about the time or after the commencement of the court. Besides it is manifest from the evidence that the plaintiff failed to disclose to the commissioner truly the amount of moneys or social effects which he had received the benefit of, and not paid out or accounted for, and this, it must be considered here, he did knowingly. He caused the defendant to be charged in excess and himself too little. He claimed that he presented to the commissioner the partnership book in which all proper entries were made against him as well as against the defendant. The commissioner acted alone upon that book—his whole report is grounded upon it. It is manifest that that book, as exhibited by the plaintiff, did not contain all the charges that should be made against him, or all credits that should have been given to the defendant, of which the plaintiff then knew, by considerable sums. It is true the court, in its decree, has given the defendant the credits named therein, but I think the evidence strongly tends to show that the defendant is justly entitled to credits and deductions beside those given. The plaintiff and defendant occupy-

ing the relation of partners must be presumed to have confided in the honesty .and integrity of each other because of their business connections and relations; and it is not at all strange that the one partner should rely upon the other making a truthful and just exhibit of receipts as well as charges. Still parties are required to exercise reasonable diligence in attending to and defending their suits, and if they suffer because of their own laches, the fault is with themselves and not with the law or the courts, and the courts should generally hold suitors to at least reasonable diligence. But under the peculiar circumstances of this case as disclosed by the proceedings and evidence, it seems to me that manifest injustice will be done to the defendant, unless the report of the commissioner, filed in the cause, is recommitted and further opportunity given to the defendant, as well as the plaintiff, to show such payments and credits as in justice he should have, as well as to show any additional charges which should be made against the plaintiff or defendant, and that the available, as well as the unavailable, assets of the firm be better and more correctly ascertained, and reported as well also the debts and liabilities of the firm, to enable the court to make a just and proper settlement of the partnership and partnership accounts of the plaintiff and defendant.

And further, that a due administration of justice in this case between the parties requires, under the peculiar circumstances attending the same, that the cause should take this course.

For the foregoing reasons, the decrees rendered in this cause on the 16th day of December, 1873, and the 10th day of November, 1873, must be reversed and annulled, and the appellant recover against the appellee his costs in this Court expended about this appeal. And this Court proceeding to render such decree in the cause as said circuit court should have rendered, it is adjudged, ordered and decreed, that the cause be remanded to the circuit court of the said county of Kanawha, and that the report

of commissioner Snyder be recommitted to him, or some other commissioner, by said circuit court for the purposes stated in the written opinion of this Court; and that such other and further proceedings therein be had as are in accordance with the principles and rules governing courts of equity in such cases.

Hoffman and Paull, Judges, concurred.

Moore, Judge, absent.

DECREE REVERSED AND CAUSE REMANDED.