# CHARLESTON.

NATIONAL BANK OF KINGWOOD v. JARVIS *et al.*

Submitted September 8, 1886.—Decided November 13, 1886.

Under a decree of the court, a commissioner is directed to sell three tracts of land ; on the day of sale the land is bid off to A., the debtor, and he being unable to comply with the terms of sale makes a parol agreement with D., by which it is agreed he shall be reported as the purchaser instead of A., and the latter, as an inducement to D. to purchase, agrees to get his wife to release her contingent dower in the lands, which the wife afterward refuses to do ; the commissioner reports D. as the purchaser, and the court confirms the sale without objection ; on a subsequent day of the same term N., a creditor of A., offers for one of said tracts an upset bid of twenty *per cent.* advance on the price of said tract, and the court sets aside the confirmation as to said one tract ; at a subsequent term D. moves the court to confirm the sale to him of said tract, and A. moves to have the same set aside and a re-sale ordered ; the court sets aside the sale and orders a re-sale on the basis of the upset bid, the re-sale is made and N. becoms the purchaser at his upset bid ; this sale is confirmed, and D. appeals to this Court.  HELD :

  I. The court properly set aside the order confirming said first sale.  (p. 813.)

  II. N. had the right to ask the court to set aside said order of confirmation and sale, although it was demonstrable that A. had ample other real estate to pay his debt.  (p. 814)

  III. The said parol agreement could not be specifically enforced ; nor could it operate as an estoppel or conclude the right of A. to resist the confirmation of the sale.  (p. 815)

  IV. The court rightly set aside the first sale of said tract and properly confirmed the re-sale to N. at his upset bid.  (p. 815)

*Martin & Woods* for appellant.

*A. F. Haymond* for appellee.

SNYDER, JUDGE :

In October, 1882, the National Bank of Kingwood on behalf of itself and all other creditors of Granville E. Jarvis exhibited its bill in the circuit court of Taylor county against said Jarvis and others, to subject the real estate of Jarvis to the payment of the judgment of the plaintiff and

other judgment creditors of Jarvis. The cause was referred to a commissioner, who reported the lands owned by Jarvis and the debts operating as liens thereon. The cause was soon after removed to the circuit court of Marion county where all subsequent proceedings were had therein. By decree entered December 18, 1883, the said report was confirmed without exception and Frank Woods appointed Commissioner to sell a large number of tracts and lots of land of Jarvis to pay the debts so reported as liens thereon. The said commissioner at the July term 1884, filed his report, in which he reports, among other sales, that pursuant to said decree, he did on March 20, 1884, sell to Thomas E. Davis three tracts or parcels of land all lying in Ritchie county, viz: (1) three undivided fourth parts of 171 acres on the waters of Spruce creek, at the price of $614.00; (2) the one undivided fourth of 1,000 acres lying on the North Fork of Hughes River, at the price of $2,025.00; and (3) a tract of 184¼ acres, lying on McFarland's Run, at the price of $736,00, for each of which tracts the said Davis made the cash payment and gave bonds separately and in all respects complied with the terms of sale. This report was by a decree entered July 17, 1884, confirmed without exception.

On July 15, 1884, by leave of the court James B. Newlon filed his petition in the cause, in which he alleged that in November, 1882, he had recovered a judgment for $742.47 against the defendant, Jarvis, in the circuit court of Taylor county, which had not been reported or provided for in this cause, but was a lien on all the lands of Jarvis, and prayed that he might be made a party to the cause, and that his judgment might be provided for, the same as if he had been originally a party.

At the same time said Newlon filed his affidavit in which he says, that the aforesaid undivided fourth of 1,000 acres of land was bid in by Claude S. Jarvis for $2,125.00 or more, and that said T. E. Davis bid within $25.00 of the said bid of Jarvis; that on yesterday he was surprised to find that said land had been reported by the commissioner as sold to Davis at $2,025.00; that he believes this was done by some arrangement between the commissioner and Jarvis which is not binding upon affiant who would be injured by it; that he

was informed by the commissioner that, if Jarvis did not comply with the terms of sale, the land would be re-sold, and that there was another person who was anxious to buy the land at a greater figure; that the price of the land as reported is very inadequate; that the land is worth $3,000.00, and that if a re-sale is ordered he will make it bring $2,500.00.    With this affidavit he filed his bond with security binding himself to make said land bring $2,500.00 on a re-sale.

Newlon then moved the court to set aside the sale of said land, with leave to except to the report of sale; and thereupon the court, on said 15th July, 1884, made an order, giving Newlon leave to except to said report, and setting aside so much of the decree of July 7, 1884, entered on a former day of the term, as confirmed the sale of said one fourth of 1,000 acres of land sold to said Davis, and continued the consideration of the confirmation thereof to a future term.

Newlon then excepted to the report of sale on the ground that the sale to Davis of said one fourth of 1,000 acres was at an inadequate price, and because said land had been reported at a less price, than was bid for it, and to different persons than the highest bidder without any cause therefor or re-sale having been made.

The defendant, Jarvis, on September 2, 1884, by leave of the court filed exceptions to said report of sale so far as it relates to said 1,000 acres of land.   His exceptions are in effect as follows:    (1.)   The price is inadequate, the same having been reported by the master commissioner as worth $2,500.00; (2.) It was improperly advertised as the one fourth of 1,000 acres when the papers showed that it was the one half of 675 acres, and before the sale this 675 acres had been divided and 401 acres assigned to him in severalty ; (3.) The land had not been advertised in a newspaper in Ritchie county where it lies as required by chap. 151, Acts 1872–3; (4.) It had not been bid in by Davis; and (5.) Its chief value consists in its timber and it had not been advertised as timber land.

In support of these exceptions, Jarvis filed certified copies of deeds showing the partition of the land and the assignment of 401 acres to him in severalty, and his own affidavit which will be noticed hereafter.

On September 2, 1884, Newlon by leave of the court filed an up-set bid of $3,025.00, with bond and security to make the same good, and his affidavit stating the land was worth that price.

On November 28, 1884, Thomas E. Davis made a motion to confirm said sale and by leave of the court filed in support of his motion the affidavits of himself, Frank Woods and J. W. Mason. In his own affidavit Davis states, that on March 20, 1884, he was present at the sale and made a number of bids on the three tracts of Ritchie county lands before mentioned; the defendant, Jarvis, bid against him, and the said lands were bid off to Jarvis and by his direction reported as sold to his son, Claude S. Jarvis; after a number of sales had been made, the commissioner gave notice that he would adjourn the sale of the other lands to Monday, March 24, 1884, and he would then re-sell such lands as had been sold to purchasers who had failed to comply with the terms of sale; on Monday at the request of Jarvis he agreed to take said three tracts of land at the aggregate sum of $3,375.00, Jarvis agreeing to unite with his wife in a separate deed releasing the wife's contingent right of dower, and the commissioner was to report him, Davis, as the purchaser at that price instead of Claude S. Jarvis; they went to commissioner Woods and stated their agreement, and he required them to fix a price on each tract separately as he was not authorized to sell the three tracts together; they then, as simple matter of form, fixed the price of each tract as set forth in the report of the commissioner; after the sale was closed affiant prepared a deed for Jarvis and wife to execute as had been agreed and left it with Jarvis to be executed and sent to him; he then returned to his home in Ritchie county, and having no doubt that the sale would be confirmed, he sold the fourth of said 1,000 acres and bound himself to make a deed therefor with covenant of general warranty; Jarvis and wife refused to execute the deed releasing dower; and that it will be a fraud upon him and he will suffer great damage if the sale of all three of said tracts of land is not confirmed.

The affidavit of Frank Woods, the commissioner, in regard to the bidding off of the lands, the fixing of the price and the agreement between Jarvis and Davis, is substantial-

ly the same as that of Davis; Woods further states that he had disbursed all or part of the cash payment made by Davis on these three tracts of land by the written request of Jarvis; and that after the agreement had been made that Davis was to take these lands, he on March 24 offered them for sale at public auction and they were bid off by Davis.

J. W. Mason in his affidavit states that he understood from both Jarvis and Davis that they had made the arrangement by which Davis was to take these lands, and that the same had been carried out as stated in the aforesaid affidavit of Davis, and that Jarvis and wife refused to make the deed releasing dower.

The affidavit filed by Jarvis in support of his exceptions to the report of sale tends to support said exceptions, and as to the agreement between Davis and him, by which it was arranged that Davis was to be reported as the purchaser of said three parcels of land instead of Claude S. Jarvis, it does not differ materially from the facts in regard thereto stated in the aforesaid affidavit of Davis, except that Jarvis says said arrangement was entered into by the misrepresentation of Davis as to the value of the lands and especially the fourth part of the 1,000-acre tract; and he denies that the price agreed upon for the three tracts was an aggregate sum; but that the price of each tract was fixed separately, and that he has no interest in the upset bid made by Newlon except the increased price that will be obtained for the land. Some other affidavits were filed by Jarvis, which I deem it unnecessary to notice.

By decree of December 17, 1884, the court on consideration of the affidavits, upset bid and other matters before stated overruled the motion of Davis to confirm the sale; and decreed, that said fourth part of 1,000 acres, being in fact, 401 acres belonging to Jarvis in severalty, be re-sold by Commissioner Woods, directing the commissioner to offer the same at the upset bid of $3,025.00, made by Newlon and if no greater price is offered to sell the same to said Newlon. From this decree and that of July 15, 1884, T. E. Davis appealed to this Court and his appeal was dismissed as having been improvidently awarded. (26 W. Va. 785).

After the cause had been remanded, the said T. E. Davis

by leave of the court filed a cross-bill making Jarvis alone defendant therein. This bill simply alleges the facts and proceedings hereinbefore stated and prays, that the sale of the fourth part of the 1,000 acres of land to Davis may be confirmed, the aforesaid decree of December 17, 1884 set aside, and the wife of Jarvis be required to release her contingent right of dower or an abatement be made in the purchase-money equivalent to said dower interest. This bill was supported by depositions tending to prove the facts set out in the affidavits of Davis and others hereinbefore set forth. The defendant, Jarvis, demurred to said cross-bill and excepted to and moved to exclude said depositions, upon the ground, *inter alia*, that they referred to matters *res judicata*.

Commissioner Woods having reported that he had made the re-sale of said 401 acres of land to J. B. Newlon at his upset bid of $3,025.00, and that Newlon had paid the cash payment and given his bonds for the deferred payments, the court by its decree of March 16, 1886, dismissed Davis's cross-bill, sustained the exceptions to and excluded the depositions filed in the support of said cross-bill, confirmed the sale of said 401 acres to said Newlon and ordered a deed to be made to him upon the payment of all the purchase-money. From this and other decrees T. E. Davis obtained the present appeal. Various grounds of error are assigned, all of which are comprehended in the following:

*First.*—The court, by its decree of July 15, 1884, erroneously set aside that portion of the decree of July 7, which had confirmed the sale of the fourth part of the tract of 1,000 acres, called the "Blue land."

*Second.*—It was error to set aside the confirmation of the sale of said "Blue land" without also setting it aside as to the other two tracts purchased by Davis.

*Third.*—It was error to permit either Jarvis or Newlon to except to the report of the sale of the said "Blue land."

*Fourth.*—It was error to dismiss the cross-bill and suppress the depositions filed in support thereof; and

*Fifth.*—It was error to confirm the sale of the "Blue land" to Newlon.

The first three of these assignments may be conveniently considered together. The record shows, that it was on the

petition, affidavit and up-set bid of Newlon, that the order of July 15, 1884, setting aside so much of the decree of July 7, as confirmed the sale of the "Blue land" was made. The said order and decree were both made during the same term. The question then arises. Was the court warranted by either the law or the facts appearing to it at that time in making said order of July 15th? As a matter of law, it seems, that in admiralty cases, where it appears, after a decree has been entered, and before the end of the term, that there is error, the court has power to correct the decree, but this power is not absolute. 4 Min. Inst., pt. II. (1285), 1435. But in other chancery cases, the rule in this country seems to be, that all decrees are *in fieri* and in the breast of the court and subject to its absolute control, until after the end of the term; that is, that it does not properly become a decree until the term ends. (4 Min. Inst., pt. II., (1252), 1390; *Laidley* v. *Merrifield*, 7 Leigh 353; *Hodges* v. *Davis*, 4 H. & M. 400; *Carper* v. *Hawkins*, 8 W. Va. 291; *Green* v. *Railroad Co.*, 11 W. Va. 685.) According to these authorities it is unquestionable, that the court has absolute control of all interlocutory decrees during the whole of the term, at which they are entered, and may at its discretion set them aside without notice and of its own accord.

But conceding this was not an interlocutory decree and that the action of the court setting it aside is subject to review by this Court, I am clearly of opinion that the action of the court, according to the facts and circumstances then appearing, was right and ought not to be disturbed by this Court. The alleged private contract between Jarvis and Davis in regard to the sale did not then appear. It did appear, however, that the land had been sold at an inadequate price. This was shown by the best possible evidence and in the most conclusive manner by the upset-bid for an advance price of more than twenty per cent. This was of itself sufficient to set aside the confirmation and order a re-sale. (*Kable* v. *Mitchell*, 9 W. Va. 493).

The petition of Newlon and the judgment exhibited therewith showed that he was a large creditor of Jarvis, and he was therefore entitled to except to the report of sale and ask for a re-sale. It is not for the court to consider contingencies

and .decide upon their probable results. It is therefore immaterial, that it afterwards appeared, or that it was demonstrable at that time, that Jarvis owned other real estate ample for the payment of Newlon's judgment. The court has no right to release any legal security which a creditor may have for his debt, upon any proof however conclusive, that such security is not necessary for his protection. The creditor alone has the right to decide that matter, and the court must respect his decision, although it may regard such decision as over-cautious or even capricious.

Jarvis certainly had the right to except to the sale and ask for a re-sale, unless he was estopped from doing so by the alleged private sale made between him and Davis. The effect of this alleged private arrangement will be hereafter considered.

It is sufficient answer to the *second* assignment of error to state, that no motion was made or cause shown for setting aside the sale as to the other two tracts of land purchased by Davis. These tracts were separate purchases and so reported. It does not even appear that they adjoin the tract as to which the confirmation was set aside or that the sale of them was in any manner connected with or dependent upon the sale of that tract. In fact in none of the subsequent proceedings in the cause did Davis ever ask or attempt to show any cause why the sale of said two tracts should be set aside. He does in his affidavit state that his private arrangement with Jarvis was for the purchase of the three tracts at a gross sum, and urges that as a reason why the sales of all the tracts should be confirmed, but he does not ask or intimate that for that reason or upon that ground he wishes the sale of two tracts set aside.

I will also consider the *fourth* and *fifth* assignments together. There can be no question that the circuit court did right in confirming the sale of the "Blue land" to Newlon at the price of $3,025.00 and in refusing to confirm it to Davis at $2,025.00 unless Davis was entitled to have his alleged private agreement with Jarvis specially executed. This proposition is too plain for discussion. The sole purpose and object of the amended bill and depositions filed in support of it were to have this private contract or agreement between Davis and

Jarvis in reference to said three tracts of Ritchie county land specifically performed. This matter it seems to me, was fully presented by the exceptions, affidavits and other evidence filed before and at the time the decree of December 17, 1884, was entered setting aside the sale to Davis and ordering a resale of the "Blue land." That decree was an adjudication of all the questions and facts attempted to be presented by the cross-bill. The cross-bill was not filed until after said decree had been entered and become *res judicata.* If that decree was proper, then it necessarily follows that the cross-bill was improper and the court did not err in dismissing it and suppressing the depositions filed to sustain its allegations.

The important question then is: Was or is the said decree of December 17, 1884, erroneous? And as before stated this decree was unquestionably right, unless the private agreement aforesaid between Davis and Jarvis required a different decree; that is, unless Davis was entitled to a specific performance of said agreement. It is certain, that he was not entitled to such performance as against the rights of Newlon and the other creditors of Jarvis. Their rights were beyond the control of either Davis or Jarvis. We have already answered the contention, that Jarvis had ample other lands to pay Newlon's debt, and that therefore he had no right to interfere with this sale. But conceding that Newlon had no interest in the matter, let us consider whether or not Jarvis was concluded or estopped from objecting to the confirmation of the sale to Davis. If he is so concluded, it must be by reason of his agreement with Davis, and in order that said agreement may have that effect, it must be a legal agreement and one which can be enforced by a court of equity. The substance of this agreement was that Davis should be substituted in lieu of Claud S. Jarvis as the purchaser of said lands and the commissioner was to so report to the court, and as an additional inducement to become such purchaser Jarvis agreed that his wife should release her contingent dower in the lands. It is not pretended that Jarvis by any promise or stipulation bound himself not to oppose the confirmation of the sale. Such may have been the inference of Davis, but inferences do not make contracts or operate as estoppels. It may even be regarded as a moral

breach of the agreement, and bad faith on the part of Jarvis to oppose the confirmation of the sale, but the agreement being by parol and therefore void under the statute of frauds, neither the agreement itself nor its implied obligation can be legally enforced. When the agreement was made, it was understood and known to both parties, that neither they nor the commissioner had any power to make any absolute sale of the lands. All they did and all they could do, was to agree that the commissioner should report Davis as the purchaser of the lands at a fixed price. They did not and they had no power to agree that the court should confirm the sale at that price. All sales made by commissioners under decrees of court are conditional; they are merely accepted offers, which the court may or may not approve and confirm, (*Kable* v. *Mitchell*, 9 W. Va. 492). The parties necessarily contracted with reference to the law, and therefore the sale effected or attempted to be made by them was essentially conditional. It can not with any propriety be claimed that such a sale, especially when it is by parol, can be enforced in a court of equity. And if it can not be enforced it is the same in law and effect as if it had never been made. All that the parties could have contemplated or expected from such an agreement was that it would be carried out in good faith by them respectively, and the only guaranty or reliance either could have, that this would be done, was the word and integrity of the other, and the mere moral obligation of a promise not enforceable in law. If either party has found this guaranty or sanction unavailing, he must bear the consequences of his folly or misplaced confidence, the courts can not assist him. In any view of the facts I am of opinion, that said alleged private agreement was ineffectual in law for any purpose and presented no *legal* obstacle to the right of Jarvis to oppose the confirmation of the sale of said lands.

For the reasons stated, it seems to me there was no error in any of the decrees complained of, and all of them must therefore be affirmed.

AFFIRMED.