H. R. Pugh *et al. v.* D. W. Boone *et .al.*

(CC 450)

Submitted November 3, 1931.    Decided November 10, 1931.

*R. T. Hubard,* for Mountain View Realty Co.
*John Q. Hutchinson,* for Beckley National Bank.

LIVELY, JUDGE:

On July 19, 1930, Mountain View Realty Company purchased, and had confirmed to it on that date, certain real estate situate in Raleigh and Fayette counties, sold at public auction in pursuance of a decree entered in the chancery suit of Pugh and others against D. W. Boone and others—a creditors' suit against Boone.  On July 24, 1931, Mountain View Realty Company petitioned the circuit court to direct the

special commissioners, who sold the property, to pay the 1930 taxes thereon out of funds in their hands, or allow it abatement to the amount of the taxes on its purchase money notes yet unpaid. The Beckley National Bank, a creditor of Boone and whose debt had been decreed to be paid in the order of its dignity and priority by decree of March 28, 1930, demurred to the petition, which demurrer was overruled; the bank then answered the petition and upon demurrer to the answer, the court sustained that demurrer and certified its rulings to this court for review.

The creditors' suit was referred to a commissioner on October 14, 1929, to make report of the properties owned by the debtor, and the liens thereon in the order of dignity and priority. The commissioner filed his report on February 5, 1930, and it was confirmed without exception on March 28th, following, and a decree of sale then entered. On July 19, 1930, the commissioners sold the real estate involved here to the petitioner, Mountain View Realty Company, which sale was confirmed on that date. The master commissioner included in his report, as liens, unpaid taxes for the years 1928 and 1929, but did not include in his report, or make any mention of, the taxes for the year 1930. Indeed ,he could not ascertain the amount at the time he filed his report because the taxes for that year had not been ascertained. The levies are not made on the assessed values until the latter part of August of each year.

The question here presented is whether a purchaser of real estate at judicial sale and after confirmation can obtain an abatement of his purchase money price for the amount of unpaid taxes on the property purchased by him and which was not reported as a lien in the suit.

For the purposes of this certification it may be conceded that the 1930 taxes became a lien on the property sold as of the first day of January, 1930, the beginning of the tax year, and that the taxes were personal obligations of D. W. Boone, secured by operation of law as a lien on his real estate. The fact that this lien was not reported (probably for the reason above suggested) would not divest the state of her lien on the property. Its lien still existed against that prop-

erty and is in no different status so far as the purchaser is concerned from any other unreported lien upon the property at the time of the sale. The ordinary lienor who fails to set up his lien after the notice to lienors, must look to any surplus left. He is penalized for not protecting his lien; but not so with the state. Mountain View Realty Company argues that the doctrine of *caveat emptor* does not apply to it, basing its contention in that regard on the case of *Young & McWhorter* v. *Smith,* 88 W. Va. 445, 107 S. E. 110. That case was where the land had been sold and purchased by the bidder on an acreage basis, by the acre, and there was found to be a deficiency in the acreage ascertained by survey after the sale and confirmation. It was held that the doctrine of *caveat emptor* did not apply, because there was a total want of consideration for the acreage not received by the purchaser. The rule of *caveat emptor* does not apply to a purchaser who could not have ascertained a defect in acreage by reasonable prudence, diligence and care. In that case, it was pointed out that the rule does not bind a purchaser beyond his knowledge or means of knowledge; but that the doctrine rests in part on the theory that the courts do not sit to accomplish "ends and purposes within the power of the citizen, without their aid." We are not dealing in the instant case with a shortage in the land or of total failure of consideration for the money contracted to be paid under the bid. The purchaser gets all the land he bought. That land is encumbered by a tax lien for a definite sum, ascertained in the latter part of 1930 when the levies were extended, the lien to secure it dating from the first day of the assessment year, under the statute. The means of ascertaining this lien and the amount thereof was as open to the purchaser as to the court. It knew or should have known that the law fixed this lien on the property it was about to purchase and that it had not been paid, and could not then have been paid, for the taxes for that year had not yet been extended on the books. It knew or should have known these taxes were not set up in the creditors' suit. We perceive no sound reason for making the situation an exception to the rule of *caveat emptor*. And in dealing with the exact question presented here, this court

said, through JUDGE WOODS in *Buskirk* v. *Musick*, 100 W. Va. 205, 211: ''From a consideration of the foregoing authorities, we are inevitably led to the conclusion, that in the absence of a statute in our state fixing liability, a lien for taxes existing upon property sold at judicial sale, will be treated as any other lien or encumbrance existing thereon at the time of the sale.'' In that case, the purchaser was actually advised by public outcry at the time of the sale that certain taxes had not been paid on the land and that the property was being offered subject to payment of the tax liens by the purchaser. He was actually advised of something which the rule of *caveat emptor* required him to know—an existing encumbrance on the land not taken care of in the decree of sale. By the petition of the purchaser for abatement, it avers that the property was sold free of encumbrances and liens and that it purchased under that understanding; the answer of the bank challenges that averment and says that it (the bank) was present at the sale by agent for the purpose of bidding to protect its lien and no such assurances were made by the commissioners of sale either publicly or privately. On the demurrer, the averment in the answer must be taken as true. We are here passing upon the sufficiency of the answer under the certification statute. It will be observed that the sale was made on July 19, 1930, and confirmed on that day to the realty company. It has had possession or presumably has had possession of the property for the remainder of the year in which these taxes were assessed. While it may be conceded that the tax lien attached as of the first day of January, the beginning of the assessment year, and that the amount thereof could not be ascertained until the taxes were levied, yet the possession and enjoyment of the property by the realty company for nearly one-half of the year for which the taxes were assessed, ought to have some bearing upon its equities. However, that fact would have little influence upon the application of the doctrine of *caveat emptor*. We simply mention it in passing.

It is also argued by the realty company that the decree of sale is not a final decree, because there is no order of distribution of the funds received from the sale and in the hands

of the commissioners; that therefore these funds are still at the disposal of the court without respect of priorities fixed, and the prayer of the petition could be granted by directing a payment of the tax lien from those funds, or by abatement upon the purchase money notes of the realty company yet in the hands of the commissioners. To do either would upset to that extent the decree which confirmed the commissioner's report and which fixed the liens on the real estate in the order of their dignity and priority. The effect would be to change the order of dignity and priority as set out in that decree and materially affect the bank and the other creditors who have had their liens fixed and who presumably would bid at the sale a sufficient sum to protect their liens as fixed by the decree. We are of the opinion that the decree confirming the commissioner's report ascertaining the property to be sold and the liens thereon in their dignity and priority is a final decree. It finally adjudicates upon the merits of the controversy and leaves nothing further to be done but the execution of it in accordance therewith. Our statute, section 1, chapter 135, Code 1923, recognizes such a decree as final because it provided that an appeal therefrom may be had. It says that any decree which directs real estate to be sold, or possession or title of the property to be changed, or adjudicating the principles of the cause may be appealed from. Ordinarily, an interlocutory decree is not appealable. The decree under consideration is such that a bill of review would lie to it for errors apparent upon the face of the record. In *Core* v. *Strickler*, 24 W. Va. 689, it was held that "a decree made upon the hearing on the merits, which settles and adjudicates all the matters in controversy between the parties, is such a final decree that a bill of review will lie to it, although much may remain to be done before it can be completely carried into execution." Here, we have a decree which settles the principles of the cause and the distribution of the money to be made under that decree is administrative; for the proceeds of sale, after payment of costs and expenses of sale, would be distributed to the persons and in priorities already determined. After adjournment of the term a final decree cannot be changed, except for clerical errors or by bill

of review for errors apparent upon the face of the record, or for fraud. *Barbour* v. *Tompkins,* 58 W. Va. 572. We are of the opinion that the ruling of the court in sustaining the demurrer to the answer should be reversed, and the demurrer overruled; and so answer the question certified.

*Ruling reversed.*