THE STATE ROAD COMMISSION OF WEST VIRGINIA, *Etc., et al.* (PROJECT NO. I-64-1(31) O PARCEL NO. 354)

v.

JOHN W. HEREFORD, JUDGE, CIRCUIT COURT OF CABELL COUNTY, *et al.*

*and*

THE STATE ROAD COMMISSION OF WEST VIRGINIA, *Etc., et al.* (PROJECT NO. I-64-1(31) O PARCEL NO. 354-TRACT II)

*v.*

JOHN W. HEREFORD, JUDGE, CIRCUIT COURT OF CABELL COUNTY, *et al.*

(No. 12632)

Submitted February 14, 1967. Decided March 21, 1967.

*Anthony G. Halkias,* for relators.

*Greene, Ketchum, Baker & Pauley, Lawrence L. Pauley,* for respondents.

CAPLAN, JUDGE:

In this original proceeding in prohibition the petitioners, the State Road Commission of West Virginia and Burl A. Sawyers, State Road Commissioner of West Virginia, filed a petition seeking to prohibit The Honorable John W. Hereford, Judge of the Circuit Court of Cabell County, from enforcing the order of said court entered on May 13, 1966, which set aside a final order entered on January 14, 1966 and awarded the defendants a new trial and further ordered that that case be consolidated and tried together with the second case instituted by the State Road Commission. On December 5, 1966 a rule was granted by this court returnable on January 17, 1967. By agreement of the parties, the case was continued twice and on February 14, 1967 it was submitted for decision upon the petition, with its exhibits, the answer of the respondents, the replication of the petitioner to the answer, the petitioner's demurrer to the answer, a stipulation of facts and upon the arguments and briefs of counsel.

The petitioners allege that it became necessary to acquire certain land for the purpose of constructing an access road to that certain highway designated as Route No. I-64. Pursuant to statutory authority and in accordance with this determination, the petitioners on June 28, 1963 instituted an action, designated Case No. 10235, in the Circuit Court of Cabell County wherein they sought to condemn and acquire 1.81 acres of the land of B. B. Thompson and others.

As provided in Code, 1931, Chapter 54, Article 2, as amended, commissioners were appointed by the court to ascertain the amount of compensation to which the property owners would be entitled. After hearing evidence on the value of the property involved, the commissioners, on October 21, 1963, awarded the

defendants $9,600.00 as just compensation for the property taken and for damages to the residue of 9.79 acres. Both parties excepted to the report of the commissioners and a jury trial was demanded. Upon the trial of this matter, the jury, on May 22, 1964, returned a verdict awarding to the defendant property owners the sum of $9,000.00. The defendants in that proceeding filed a motion to set aside the verdict and argument thereon was heard on January 22, 1965. By letter memorandum dated June 7, 1965, the court overruled the defendants' motion and on January 14, 1966 effected such ruling by entering a final order overruling the defendants' motion and entering judgment on the verdict.

Several months after the verdict, but prior to the final order of January 14, 1966, a landslide occurred on the residue of the defendants' land which, according to the best judgment of the petitioners, prevented the construction of the planned access road to such residue.

The petitioners believing that it was necessary, by reason of the landslide, to acquire an additional 1.58 acres of the residue, on November 18, 1965, instituted a second condemnation proceeding, designated Case No. 14478. The express purpose of this action was to acquire the land necessarily taken because of the landslide and to compensate the landowners therefor and for any damages to the residue, including their admitted inability to construct the formerly planned access road to the defendants' remaining property.

The defendants filed an answer in Case No. 14478 contesting the petitioners' right to take the additional 1.58 acres. On April 22, 1966, during the hearing on the question raised in the answer, wherein the court ruled that such right did exist, Mr. Chad W. Ketchum, who represented these defendants in Case No. 10235, was in the courtroom. After the court so ruled, Mr. Ketchum presented an oral motion to set aside the final order of January 14, 1966, entered in

Case No. 10235, to set aside the jury verdict, to award a new trial and to consolidate the two cases to be tried as one. This oral motion was made without any notice to the petitioners. The court indicated that the motion would be granted and directed Mr. Ketchum to prepare an order in accordance with its ruling.

The first order prepared and presented by Mr. Ketchum was based on constructive fraud committed by the State Road Commission in obtaining the first verdict and was refused by the court. However, on May 13, 1966, the trial court entered an order sustaining Mr. Ketchum's motion, to which the petitioners objected and excepted. The basis for the court's ruling is that the petitioners represented, during the first proceeding, that they would construct an access road to the residue of the defendants' property but that, due to the condition occasioned by the landslide, they are unable to do so. This, the court reasoned, constituted newly discovered evidence which by due diligence could not have been discovered prior to that time. The court further commented that the landslide was caused by the failure of the petitioners to conduct a proper investigation during the subject road construction. There is no evidence in the record of this proceeding upon which to base such conclusion.

This proceeding was instituted to prohibit the Judge of the Circuit Court of Cabell County from enforcing its order of May 13, 1966.

The petitioners contend that the trial court's order of May 13, 1966, if enforced, will constitute an abuse and usurpation of such court's power in that, in the circumstances of the proceedings below, it had no authority to set aside the final order of January 14, 1966. It being apparent therefrom, say the petitioners, that the court exceeded its legitimate powers, a writ of prohibition will lie to prevent the enforcement of said order. It is also asserted by the petitioners that where the trial court exceeds its legitimate powers, the

party complaining of its action is not required to proceed with the trial and depend upon appellate relief to rectify the court's error. Furthermore, it is the position of the petitioners that the principle of granting a new trial on the basis of newly discovered evidence had no application in the proceedings below.

The respondent in this proceeding, relying on a 1963 amendment of Code, 1931, Chapter 54, Article 2, Section 10, as amended, contends that the subject action in eminent domain is within the West Virginia Rules of Civil Procedure. He also asserts that the petitioners' representation in Case No. 10235 that they would construct an access road and their subsequent inability to do so by reason of the landslide constitutes an error in fact which, under the provisions of Code, 1931, Chapter 58, Article 2, Section 3, would confer authority on the court to set aside the final order of January 14, 1966; that the court had jurisdiction of the subject matter in controversy and did not, therefore, exceed its legitimate powers; and that the writ here sought should be denied because of the inequitable conduct of the petitioners.

In arriving at a solution of the questions presented in this proceeding, let us first consider the respondent's contention that the actions in eminent domain involved here are within the operation of the West Virginia Rules of Civil Procedure, promulgated and adopted by this Court and made effective July 1, 1960. Rule 81 (a)(6), R.C.P., provides: "These rules do not apply to proceedings to condemn real or personal property." The respondent reasons that Code, 1931, Chapter 54, Article 2, Section 10, as amended, providing for trial by jury in eminent domain cases, having been amended and reenacted in 1963, supersedes the above quoted Rule 81 (a)(6), and brings the subject case within the rules. He relies on language of that statute, "The cause shall be tried as other causes in such court," to mean that the Legislature in 1963 intended to, and did, place eminent domain cases on

the same basis as all other civil actions, thereby abolishing Rule 81 (a)(6) R.C.P.

We do not agree with this contention of the respondent. The above quoted language of Rule 81 (a)(6) R.C.P. is clear and unmistakable. Code, 1931, Chapter 54, Article 2, Section 10, as amended, provides the manner in which a jury trial may be obtained in an eminent domain case. It provides for a jury of twelve freeholders; that only those eligible to serve as condemnation commissioners may serve as jurors; and, among other things, that no person who served as a condemnation commissioner in the proceeding may be a witness in regard to just compensation. The provision that the ''cause shall be tried as other causes in such court,'' refers only to the manner in which the trial shall be conducted. Nothing is mentioned therein about post trial procedure or any other aspect of the case. Such language cannot be construed to repeal or abolish Rule 81 (a)(6) R.C.P. The contention, therefore, is without merit.

The principle issue to be resolved is whether the judge in the proceedings below, in setting aside the final order of January 14, 1966, had jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeded his legitimate powers. If either of these circumstances exist prohibition will lie to prohibit the enforcement of his order of May 13, 1966. Code, 1931, Chapter 53, Article 1, Section 1. See *Rakes v. Ferguson*, 147 W. Va. 660, 130 S. E. 2d 102.

To decide this issue it becomes necessary to review and consider the chronology of events as they occurred in the case which gave rise to this proceeding. After a full and complete trial the jury, on May 22, 1964, returned a verdict awarding $9,000.00 to the defendants. Being dissatisfied with such award, the defendants filed a motion to set aside the verdict. This motion, after briefs were filed by both parties, was argued on January 22, 1965. The court, by letter memorandum dated June 7, 1965, stated that it was

of the opinion to overrule the defendants' motion. However, the final order overruling such motion and entering judgment on the verdict was not entered until January 14, 1966.

Unquestionably the latter order was entered during the January Term, 1966, of such court. The order, which if enforced will set aside the above final order, was entered on May 13, 1966, during the May Term, 1966. That these two orders were entered in different terms of court is clearly evident from an examination of Code, 1931, Chapter 51, Article 2, Section 1f, as amended, which provides that terms of court for the Sixth Circuit, Cabell County, shall be "on the first Monday in January and May, and on the second Monday in September." Courts will always take judicial notice of an act of the Legislature without proof thereof. *Nesbitt v. Flaccus,* 149 W. Va. 65, 138 S.E. 2d 859; *State ex. rel. Alderson v. Holbert,* 137 W. Va. 883, 74 S. E. 2d 772; *State v. Heston,* 137 W. Va. 375, 71 S. E. 2d 481. See 7 M. J., Evidence, Section 5 and 20 Am. Jur., Evidence, Section 33. Consequently, we take judicial notice of Code, 1931, Chapter 51, Article 2, Section 1f and find from the facts related in the record of this proceeding that the final order was entered in the January Term and the order complained of here during the May Term, 1966.

Numerous decisions of this Court hold generally that after the expiration of the term at which a final order adjudicating the matters involved in the action and fixing the rights of the parties was entered, the court which entered the order is without authority, unless authorized by statute, to modify or vacate it at any subsequent term. Such final order may be modified or vacated for such matter as constitutes grounds for a bill of review or for an original bill to impeach it for fraud in its procurement or other sufficient cause such as mistake in fact.

This principle was succinctly stated by this Court in *Brown v. Brown,* 135 W. Va. 579, 64 S. E. 2d 620,

as follows: ''The well established general rule in this jurisdiction is that after the entry of a final decree in a suit and the adjournment of the term at which it was entered the court can proceed no further in it by any adjudication affecting the rights or the interests of the parties; that the court has no further jurisdiction of the subject matter or of the parties in the same proceeding, in the absence of a statute conferring continuing jurisdiction; and that any subsequent decree is a nullity unless effected by some established method for review and reversal of the final decree.'' In support of this proposition see *Edlis, Inc. v. Miller,* 132 W. Va. 147, 51 S. E. 2d 132; *Pugh v. Boone,* 111 W. Va. 273, 161 S. E. 227; *Stannard Supply Co. v. Delmar,* 110 W. Va. 560, 158 S. E. 907; *Vencill v. Vencill,* 103 W. Va. 708, 138 S. E. 731; *State ex. rel. Showen v. O'Brien,* 89 W. Va. 634, 109 S. E. 830; *Barbour, Stedman and Herod v. Tompkins,* 58 W. Va. 572, 52 S. E. 707, 3 L. R. A., N. S. 715; *Morgan v. Ohio River Railroad Company,* 39 W. Va. 17, 19 S. E. 588; and *Carper v. Hawkins,* 8 W. Va. 291.

Code, 1931, Chapter 58, Article 2, Section 3 provides: ''For any clerical error or error in fact for which a judgment or decree may be reversed or corrected on writ of error coram nobis, the same may be reversed or corrected, on motion after reasonable notice, by the court, or by the judge thereof in vacation.'' We perceive no manner in which that statute affords authority for the court to set aside the final order in Case No. 10235. No clerical error appears and there is no contention that such exists. Neither is there an error in fact as contemplated by the provisions of Code, 1931, Chapter 58, Article 2, Section 3. The contention of the respondent that the failure to construct an access road constituted newly discovered evidence amounting to a mistake in fact is wholly untenable. The fact that it was discovered after the verdict that the petitioners could not construct an access road for the defendants as they represented would be done during the trial does not

constitute newly discovered evidence. This fact was nonexistent during the trial, having resulted from a change in condition after the verdict. No evidence appears in the record from which it can be concluded that the petitioners knew or should have known that the slide would occur; nor was there any showing that their investigation prior to construction was incomplete. This was a change in condition of the land after the trial was concluded and fails to meet the requirements of newly discovered evidence as a basis for a new trial. See *Rogers v. Goforth,* 121 W. Va. 239, 2 S. E. 2d 903. For circumstances under which newly discovered evidence constitutes grounds for a new trial see *State v. Farley,* 143 W. Va. 445, 104 S. E. 2d 265, and cases cited therein.

In Case No. 10235 the petitioners sought only that quantity of land which they believed was needed for the contemplated construction. When the slide occurred it was determined that additional land must be taken. Also, it was acknowledged that by reason of the condition resulting from the slide the planned access road to the residue of the defendants' land could not be constructed. Consequently, to fully recompense the landowners for the land to be taken and for any damages to the residue, including the loss of access to such residue, a second action, Case No. 14478, was instituted. Upon determination that additional land was needed for the road project involved, the petitioners, in order to protect the landowners, as contemplated by our Constitution, had no other choice. It is within the sole discretion of an agency endowed with the power of eminent domain to determine the quantity of land that is necessary for public use and that discretion will not be interfered with by the courts unless it has been abused. *State v. Bouchelle,* 137 W. Va. 572, 73 S. E. 2d 432.

There is no evidence here that the petitioners abused their discretion in determining the quantity of land needed for this project. In fact, that was the finding

of the court in Case No. 14478. Nor, as aforesaid, was there any evidence of negligence or knowledge that the slide would occur on the part of the petitioners. In these circumstances the second taking is not unlike a situation where the State Road Commission acquires and pays for certain land and later determines that additional land is needed. In the latter instance the only course open, if the land cannot be acquired by purchase, is the institution of a proceeding in eminent domain. That, in fact, was what was done here.

In view of the foregoing, we are of the opinion and so hold that the respondent, by the entry of his order of May 13, 1966, purporting to vacate the final order of January 14, 1966, entered at a former term of such court, exceeded his legitimate powers. Therefore, the order of May 13, 1966, being a nullity, its enforcement by the respondent is hereby prohibited.

The writ of prohibition, as prayed for by the petitioners, is awarded.

*Writ awarded.*