# CHARLESTON.

SLINGLUFF *et al.* v. GAINER *et al.*

Decided January 19, 1901.

. PROCESS—*Full Name of Parties.*
    It is better in judicial process, or other legal documents, to use the full Christian names and surnames of parties therein, not mere initials. (p. 9).

2. SERVICE OF PROCESS—*Persons Same Name.*
    Case of service of process on the wrong person, having the same initials of Christian name as the defendant intended, discussed. (p. 9).

3. DECREE—*Motion to Reverse—Errors.*

> On a motion to reverse a decree by default, the errors must be specified in the notice of the motion, or on the record in the motion, or in a written assignment of errors filed as a part of the record.  (p. 13).

Appeal from Circuit Court, Calhoun County.

Action by Slingluff, Johns & Co. against Gainer & Sturm and others.  Decree for plaintiffs, and defendant R. E. Morgan appeals.

*Affirmed.*

WALTER PENDLETON, for appellant.

MERRICK & SMITH and LINN & HAMILTON, for appellees.

BRANNON, JUDGE:

Slingluff, Johns & Co. brought a chancery suit against Gainer and Sturm and others to enforce the lien of a judgment on land of the defendants, in which suit there was a reference to a commissioner to convene the holders of all liens against the land sought to be subjected, and the commissioner made report of such liens, and upon such report a decree was entered specifying the liens chargeable upon the land, and subjecting the land to sale by commissioners appointed by the decree.  This decree adjudicated the matters involved in the suit and fixed the rights of the parties.  R. E. Morgan was made a defendant by the bill, which stated that F. L. Sturm, one of the owners of the land, had executed a deed of trust on the land sought to be subjected to Downs, trustee, to secure R. E. Morgan in moneys thereafter to be advanced to Sturm.  The commissioner reported that no proof had been adduced before him to show that any money had been furnished by Morgan to Sturm under the said trust, and no debt was reported by the commissioner or allowed by the decree to Morgan under said deed of trust.  At a later term of the court Morgan appeared in the case and asked permission to file a pleading calling itself a "petition and answer," but the court refused to allow it to be filed, and Morgan then took this appeal.

The chief point of complaint of Morgan is, the refusal of the court to allow him to file the said petition.  It sets up that Fred. L. Sturm had executed the deed of trust to secure Morgan for

future loans, and that Morgan had lent Sturm at different times different sums of money amounting to nine hundred and fifty dollars, and that Sturm executed his notes therefor. The petition further stated that Morgan resided in Marion County, and that he had never been served with process in the suit, which was in Calhoun County, and had no knowledge of the suit for a long time. It further stated that he accidentally learned of the pendency of the suit, and had committed the notes for his debt to the hands of Carl Sturm to present them to the commissioner, which Sturm failed to do, a fact which he did not learn until after the said decree. The process sent to Marion County to be served on Morgan was returned served "on the within named R. E. Morgan, April 29, 1896, by delivering to him a copy thereof in writing in Marion County." The said petition alleged that there was another man named R. E. Morgan resident in Marion County having the initials R. E., his correct name being Rufus E. Morgan, while the petitioner, though having the same initials, was, by proper name, Robert E. Morgan, and that the process was in fact served on Rufus E. Morgan, and not on petitioner, Robert E. Morgan. If this is so it shows that the practice, now so widely prevalent, of using in legal documents mere initials is wrong, often the source of mistaken identity or other confusion. Initials are not a name, but only a hasty, careless, substitute for the proper name. A name is one or more words used to distinguish a person, as Socrates or Benjamin Franklin, says Bouvier's Law Dictionary. Since the days of William the Conqueror, by the common law, a name consists of a given name, called Christian name, because given in Christian baptism, and a surname, which is the family name or patronymic. A middle name or initial is in law no part of the name, though practically it is some times useful as a means of identification; but it may be omitted from a document without prejudice to it. The law from William of Normandy continues as just stated down to this day. *Enewold* v. *Olsen,* 39 Neb. 59; 22 L. R. A. 573; *Godbe* v. *Tootle,* 154 U. S. 576. It has even been held in several cases that I have noticed that the giving of mere initials in legal proceedings makes them void. *Vawter* v. *Gilliland,* 55 Ind. 278. I do not go so far, but the fact serves to show how objectionable it is, this loose practice, now so common. 14 Ency. Pl. & Pr. 273; *Monroe Co.* v. *Becker,* 147 U. S. 47, 58; *Walton* v. *Marietta Co.,* 157 U. S. 342.

If that petition states the truth in saying that another man, Rufus E. Morgan, was served with that writ, instead of Robert E. Morgan, what is its effect? For the actual decision of this case it is not necessary for me to say, though not improper to indicate my opinion, which is, that it would entitle Morgan to relief, for the reason that the identical man Morgan, Robert E. Morgan, entitled to that deed of trust was not served with process, and the court had no jurisdiction as to him, because a court, to render a valid decree, must have jurisdiction of both the subject matter and the parties, and it cannot have power over a party or his rights, unless he has notice or appears in the case. That decree does not affect Morgan's rights. Without hindrance from it, he could proceed under his trust regardless of that decree; for it is certainly competent, if his right to do so were contested, to adduce oral evidence outside the record of the case, to show what person it is to whom the service of process actually applies, just as it is competent to call upon oral evidence to show to what land or other subject a deed or other writing or judgment applies, in case of ambiguity, uncertainty or confusion. To sustain Morgan's right to relief for the cause just stated, his counsel cites *Savings Bank* v. *Authier,* 18 L. R. A. 498; *Jones* v. *Commercial Bank,* 35 Am. Dec. 419; *Fitzgerald* v. *Salentine,* 10 Metc. 436, 438; *Adkins* v. *Insurance Co.,* 45 W. Va. 391; *Yates* v. *Taylor County Court,* (35 S. E. 24), pt. 4 syl., 47 W. Va. 376. I would cite *Williams* v. *Valkenburg,* 16 How. Prac. 144, to show that service on the wrong person gives no jurisdiction.

Shall we denominate the said matter relied upon by Morgan to get rid of the decree as under the head of accident or mistake? Many book definitions would rank it under either head. I would rank it under the head of accident, within the meaning of chancery jurisdiction to give relief under the head of accident. 1 Am. & Eng. Ency. L. (2 Ed.) 277; 1 Story Eq. Jur., s. 78; 2 Pom. Eq. Jur., s. 823. The jurisdiction of chancery to give relief because of accident is very ancient. 1 Am. & Eng. Ency. L. (2 Ed.) 278. Hogg's Eq. Principles 24, gives a good definition.

Counsel for the plaintiffs make the point that to allow Morgan relief would run up against the rule that a return of a sheriff of process is conclusive, and that Morgan cannot be allowed to contradict it. I do not question that such rule, where it properly applies, is safe and well established. *Rader* v. *Adamson,* 37 W.

Va. 582; *Stewart* v. *Stewart*, 27 W. Va. 168. But this is not contradicting the return; it is simply the use of oral evidence to show to what person, to what particular person, that return applies, on which R. E. Morgan the writ was served. It does not contradict a letter of that return, because that return does not tell us whether the service was on Rufus E. Morgan or Robert E. Morgan, and is thus ambiguous, applying as well to the one man as to the other, and thus producing an uncertainty which can be removed only by oral evidence to apply the writing to the subject matter or person to which it relates. 1 Greenleaf Ev. 290; *Simpkins* v. *White*, 43 W. Va. 125; *Foley* v. *Ruley*, *Id.* 513, 520; 6 Rand. 748.

If Morgan was not served, he can show that fact, but not merely that fact, as that would simply contradict the return, but in connection therewith he ought to be allowed to show that he and another man of the same initials resided in Marion County, and that particular summons was served on that other man, Rufus E. Morgan.

If in fact Morgan was not served, how is he to get relief? He could not by this petition treat it as an answer. Being after a final decree, it was too late. That decree adjudicated the principles of the cause, settled the rights of the parties, was an appealable decree, a final decree. It left nothing to be done except to carry it out. *Core* v. *Strickler*, 24 W. Va. 694; *Shumate* v. *Crockett*, 43 *Id.* 490; *Lewisburg Bank* v. *Sheffey*, 140 U. S. 445; *Keystone Iron Co.* v. *Martin*, 132 U. S. 91. The *Core-Strickler Case* holds that a bill of review lies to such a decree. How, then, can an answer do? Moreover, the fact which it sets up, want of service, has nothing to do with the pleadings in the case. A cross bill is not proper, as that concerns matters in litigation in the suit, whereas this want of process, this accident, is not in the pleadings, but *supervenient*. *West Virginia Oil Co.* v. *Vinal*, 14 W. Va. 637; *McMullen* v. *Eagan*, 21 *Id.* 234, 247. But this petition has not the form of a cross bill. It makes no parties, calls for no relief, except reversal, as if the cause of reversal were upon the record. It could not be held an answer calling for affirmative relief, because that is a cross bill, and it brings in a matter foreign to the matters contained in the pleadings of the case, and besides, contains no prayer for relief, and makes no parties, as such an answer must do. *Goff* v. *Price*, 42 W. Va. 384; *Martin* v. *Kester*, 46 *Id.* 438. And also as an an-

swer it came too late. For these same reasons it could not be treated as an original bill. The petition cannot be treated as a bill of review, because it suggested no error on the face of the record, and brought in no newly discovered matter touching the matter in litigation in the pleadings in the case. True, it brought in a new matter, but not a new matter entering into the matters in litigation, but an outside matter, an accident affecting the decree. Probably, the pleader intended it for a petition for a rehearing; but a petition for rehearing is applicable only to interlocutory decrees. I am impelled to the conclusion that as the relief sought, the setting aside of the decree, depends on this accident, wholly outside of the pleadings of the cause, or the matters involved in them, relief must be had by an original, independent suit to set aside and annul the decree because of accident. *Mannion* v. *Fahey,* 11 W. Va. 482, 496 ; *Knapp* v. *Snyder,* 15 *Id.* 434; *Morris* v. *Peyton,* 29 *Id.* 201, 213 ; *Armstrong* v. *Wilson.* 19 *Id.* 108. *Callaway* v. *Alexander,* and *Anderson* v. *Woodford,* 8 Leigh 114, 316, will show that relief against a decree for fraud, surprise or the like must be by original bill. It is a new matter not involved in the pleadings in the case, outside the case, and relief cannot be given by an order in the case. The case of *Smith* v. *McClain,* 11 W. Va. 654, would not justify the pleadings. Properly interpreted that case only holds that where there is pending another suit to affect a decree, there should not be an original bill of injunction to the first decree to stop proceedings under it until the decision in the other suit; but that application should be made to the court simply to stay the decree. The decision viewed in that light is correct.

Therefore, I can see no error in rejecting the petition. That rejection will not bar a suit for this relief, nor will this decision. It is claimed that the petition should have been received, for the reason that Morgan might have the surplus from the sale after paying other debts. The time for that had not come. Before sale there could be no surplus. Application for surplus must have a surplus to stand on. We cannot reverse a decree for a mere possible or problematical surplus, not yet existent, which may never come into being.

Appellant says that the court should have reversed the decree for several errors in the record, namely, defective service on the trustee, the commissioner's reporting debts without evidence, his not returning evidence of debts, that he did not report that the

debtors owned no other real estate, and that it was not proven tnat the real estate would not rent for enough in five years to discharge the debts.   As Morgan did not appear in the case before the decree he complains of, he cannot affect that decree until he shall make a motion in the circuit court to reverse it for such causes, before taking an appeal.   Code, chapter 134, secs. 5, 6. But the appellant would likely have us think that he did make such motion, on the theory that the record states that Morgan filed the petition above spoken of and moved the court to enjoin the sale under the decree until a rehearing could be had on that petition, and to reverse the decree.   It is clearly to be understood that this motion to reverse related solely to the one and only point stated in that petition, that is, the want of service of process.   No notice to reverse under chapter 134 of the Code, assigning cause for such reversal, appears in the record; no assignment of error was filed.   No suggestion or intimation to the court of any cause for reversal, save the single one specified in the petition, was given, to enable the court to review itself. We cannot say the court has ever acted upon those alleged errors, and until we know by record that it has acted on such errors, we cannot act on them.   Now, a motion to reverse a decree by default under chapter 134 takes the place of an appeal, and by analogy to an appeal it should specify errors, either in the notice or on the record, or in a written assignment of errors filed. The invariable practice has been to specify the errors in the notice.   There are some errors remediable by appeal, some by motion.   The Code prohibits us from reversing a decree by default until the errors in it are presented to the court below.   How can this Court say on appeal that for given errors there was a motion to reverse, unless we can affirmatively see that those errors have undergone review in the court below?   In Gunn v. Turner, 21 Grat. 382, it is held that the notice must specify errors.   This has, perhaps, been overruled in Saunders v. Griggs, 81 Va. 506, but, as 1 Barton's Law Prac. 574, asserts, the former decision is clearly the better one.   It does not appear to us that those alleged errors have been presented to the circuit court as ground for the reversal of the decree.   They clearly have not been presented there.   The appellant must show that they have been. The record does not whisper that they have been there presented.

Morgan made a motion in the circuit court to give time to

the sheriff of Marion County to amend his return by showing that the writ was served on Rufus E. Morgan. In the first place, the sheriff was not there before the court, and it does not appear that he could make that amendment. But suppose he could, it still would not show alone that Rufus E. Morgan was not the appellant, R. E. Morgan, as named in the pleadings. That amendment would not accomplish the reversal of the decree. It was too late. It was not the proper procedure to affect the antecedent decree. On a motion to reverse for defective return you can cure a defect by amendment; but that is not this case. The only process is by an independent bill.

We therefore affirm the decrees of the 15th day of February, 1898, and 14th day of October, 1898, but without prejudice to Morgan to bring any suit to set aside the said decree of the 15th of February, 1898, or to make any motion in the circuit court to reverse that decree for any cause proper under chapter 134 of the Code.

*Affirmed.*