THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIAM G. RILEY, Individually and Doing Business under the Name of W. G. RILEY & Co., Defendant.

Supreme Court, Special Term, New York County, July 26, 1946.

*Cohen & Fuchsberg* for defendant.

*Nathaniel L. Goldstein, Attorney-General (Harry Kirshbaum* of counsel), for plaintiff appearing specially.

Koch, J. The defendant moves for an order to dissolve and vacate the injunctive provisions of a final judgment entered in 1937 and permanently enjoining him from engaging in the sale and distribution of securities in the State of New York, except as a salesman employed by a reputable dealer or broker registered and qualified to act as such in the State of New York and with the Securities and Exchange Commission of the United States.

This action was commenced in 1936 on behalf of the People for a permanent injunction and other relief against the defendant, pursuant to the provisions of article 23-A of the General Business Law (§ 352 *et seq.*, added by L. 1921, ch. 649, as amd.), commonly known as the Martin Act. " Whenever the attorney-general shall believe from evidence satisfactory to him that any person * * * has engaged in, is engaged or is about to engage in any of the practices or transactions heretofore referred to as and declared to be fraudulent practices, he may bring an action in the name and on behalf of the people of the state of New York against such person * * * to enjoin such person * * * from continuing such fraudulent practices or engaging therein or doing any act or acts in furtherance thereof or, if the attorney-general should believe from such evidence that such person * * * actually has or

is engaged in any such fraudulent practice, he may include in such action an application to enjoin permanently such person * * * from selling or offering for sale to the public within this state * * * any securities issued or to be issued. In said action an order or a judgment may be entered awarding the relief applied for or so much thereof as the court may deem proper.* * * '' (General Business Law, § 353.) A trial of the issues in this case resulted in a finding of fraudulent practices in violation of law, and judgment was rendered permanently restraining the defendant from trading in securities within this State in a capacity other than salesman as aforesaid.

The defendant seeks to lift this restraint on his activity in the securities field on the basis of a claim of good behavior during the intervening years since the entry of judgment and honest dealings attested by letters of recommendation from persons of apparent standing in financial and investment circles.

The granting of such relief is opposed by the Attorney-General in the interest of the public welfare on the ground of laches and for an asserted failure of merits in the application.

To support his assertion of laches the Attorney-General relies on the provisions of section 528 of the Civil Practice Act. In the absence of exceptional circumstances not here pertinent '' A motion to set aside a final judgment, for error in fact not arising upon the trial, shall not be heard * * * after the expiration of two years since the filing of the judgment-roll * * *.'' (Civ. Prac. Act, § 528.) The present motion is made long after this period of limitation has expired, but the section is inapplicable in any event. The defendant makes no pretense of '' error in fact not arising upon the trial '', nor does it appear that there is any basis for such claim. There is no charge of irregularity in the judgment or error of any kind, nor is there any assertion of fraud or imposition in its procurement. On this motion the validity of the judgment is not under attack in any way. The instant proceeding is described as '' an application for relief from the restraint of an order of this court materially restricting the defendant in his pursuit of a livelihood and materially and potentially constituting a source of embarrassment.'' Thus, the defendant relies on the power or jurisdiction of a court of equity to relieve him from the burdens placed upon him by one of its judgments. The exercise of any such power or jurisdiction does **not rest** upon statutory provisions in respect to timeliness of

an application to set aside a judgment on usual grounds. (Civ. Prac. Act, §§ 521-528. See *Lowe* v. *Prospect Hill Cemetery Assn.*, 75 Neb. 85; *Ladner* v. *Siegel*, 298 Pa. 487.)

The initial inquiry that confronts the court is related to the question of inherent power or jurisdiction to grant a vacatur or modification of a preventive injunction issued under the Martin Act. Strangely enough, despite applications of a similar sort on other occasions this aspect of the matter has apparently never been squarely determined.

The nature of the relief in an action under the Martin Act is essentially equitable in character and intended for protection of the general public against fraudulent practices in the securities business. The right of the People to the preventive aid of equity by way of injunctive relief is predicated on the fundamental idea that remedies at law provide no proper and adequate methods to protect an aggrieved public against irreparable damage.

The injunction issued in this case is purely preventive in nature and by its terms permanent in operation. Its only legitimate aim is to secure the investing public against injury through possible future fraudulent practices on the part of the defendant. It will continue to operate and control his conduct in the securities arena so long as it serves a useful purpose and until modified or dissolved. The fact that the injunction purports to be permanent on its face does not tie the hands of a court of equity for all time and prevent it from doing equity as changing conditions demand. The restraint on the activities of the defendant in this action must be regarded as permanent in a relative sense and " only for the temporary period for which it may last. * * * Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted." (*Milk Wagon Drivers Union* v. *Meadowmoor Dairies*, 312 U. S. 287, 298.) Nor is it required for this purpose that power to vacate or modify its provisions be expressly reserved in the decree. " If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. * * * The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of chang-

ing conduct or conditions and are thus provisional and tentative. * * * a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." (*United States* v. *Swift & Co.,* 286 U. S. 106, 114–115.) Or differently stated, "The power of the court to enforce and make effective its orders of injunction, and to punish as for contempt their violation, continues for all time. As a correlative there must also exist the power to refuse to punish for the violation of the orders, and to modify or vacate, as exigencies arising since their rendition may require." (*Lowe* v. *Prospect Hill Cemetery Assn.,* 75 Neb. 85, 90, *supra.*)

This power of vacatur or modification over a decree in a preventive injunction is inherent in the court which granted it, and may be exercised in furtherance of the ends of justice where the circumstances and situation of the parties are no longer the same. This follows from the consideration that such decree creates no vested right and is essentially executory and continuing in nature with respect to the purpose or object to be attained. The final decree prolongs the life of the proceeding not for the purpose of execution alone, but for such other relief as a court of equity may conscientiously grant under the law (*Ladner* v. *Siegel,* 298 Pa. 487, *supra; Sontag Chain Stores Co.* v. *Superior Court,* 18 Cal. 2d 92). "A final or permanent injunction is a continuing process over which the equity court necessarily retains jurisdiction in order to do equity." (*Santa Rita Oil & Gas Co.* v. *State Bd. of Equalization,* 112 Mont. 359, 370.) It is always within the power of the party enjoined to seek a vacatur or modification of the decree of restraint upon a proper showing that dangers once regarded as substantial have dissipated their substance and no longer threaten. This relief may be given at any time after removal of the cause upon which the injunction was granted, and when the risk of invading the rights of the plaintiff has ceased (*Lowe* v. *Prospect Hill Cemetery Assn., supra*).

When the People invoke the aid of equity in protection of a public right and seek a preventive injunction in a proceeding under the Martin Act, they necessarily submit to the force of these principles inherent in the jurisdiction of chancery. The powers belonging to a court of equity are as plenary in such action as where only the private rights of individual litigants are involved. The equity jurisdiction of this court is consti-

tutional, and the exercise of its inherent powers in equity may not be qualified or abridged by statute.

Enough has been said on principle to support the conclusion that this court possesses an inherent jurisdiction for vacatur or modification of a preventive injunction issued under the Martin Act. The question still remains, however, whether a proper showing has been made on this application to justify the exercise of such power in favor of the defendant in this case. Considerations of public policy will influence the court to exercise or withhold its power in such manner as will be consistent with the legislative purpose. The court is mindful that the statute is remedial in character and requires a liberal and sympathetic construction to accomplish its beneficent purpose in the public interest. For this reason it will not be ready to yield to the importunities of a defendant adjudged guilty of an abuse of trust in his dealings with the investing public in the absence of a clear showing of change in circumstance that would make the relief sought by the defendant on this motion just and equitable to all parties.

The facts on which the injunctive relief was granted against the defendant are fixed and immutable. They are important as reflecting a predisposition to fraudulent practices on his part that justified the injunction. Whether such perversity of character still persists or has lost its influence remains to be seen.

It is important, therefore, to determine the method of procedure to be followed in deciding whether this presents a proper and meritorious case for relief. The judgment in favor of the People was entered in a plenary proceeding and after a full hearing on the merits. In the circumstances of this case the court should not be asked to determine the propriety of the relief sought by the defendant on affidavits alone. This can best be determined after formal hearings at which testimony will be taken and each side given an opportunity to present such witnesses as may be desired. Such procedure carries an additional advantage in that the court will have the guidance of the report of the trier of the facts, who will have had the opportunity to see and hear the defendant and his witnesses, and such witnesses as the People may choose to present.

For the foregoing reasons this motion is granted to the extent of referring to Honorable JACOB MARKS, an Official Referee of this court, the issues relating to (1) the nature of

the defendant's business interests and activities since the entry of judgment herein, his manner of conducting the same, his business associations and connections, and his reputation in his business field, as well as his standing in his family and social spheres, and (2) the nature of the business he intends to enter and the contact he would have directly or indirectly with the investing public who are purchasers of securities. Pending receipt of the report of the Official Referee, the determination of the motion is otherwise held in abeyance.