EDLIS, INC.

*v.*

C. A. MILLER, *et al.*

(CC 732)

Submitted September 1, 1948. Decided

December 14, 1948.

148

Fox and LOVINS, JUDGES, concurring.

*Samuel D. Lopinsky,* for plaintiff.

*Hogsett, St. Clair & McComas* and *J. W. St. Clair,* and *M. O. Litz, for defendants.*

HAYMOND, JUDGE:

By two separate pleadings, designated petitions, filed in the Circuit Court of Kanawha County on June 13, 1947, in a suit in equity formerly pending in that court in which Edlis, Inc., a corporation, was plaintiff, and C. A. Miller, Willie M. Miller, and The Huntington Barber & Beauty Supply Company were defendants, that company, as a corporation, and William O. Hayden, Omar M. Hayden, Alta P. Hayden and Jack P. Hayden, as individuals, who at the time owned all of its outstanding capital stock, ask that court to modify or vacate an injunction awarded by it against the Millers and The Huntington Barber & Beauty Supply Company, by final decree entered, by consent of the parties in the case, on July 29, 1942. Pursuant to process issued upon these petitions and served upon it, Edlis, Inc., the plaintiff in the original suit, appeared in court upon the return day and entered its separate demurrer in writing to each petition. The circuit court overruled the demurrers and, on its own motion, certified its rulings to this Court.

The allegations of the petitions disclose these facts which upon demurrer are regarded as true.

By written agreement, dated December 16, 1936, between C. A. Miller and Willie M. Miller, as parties of the first part, and Edlis, Inc., as party of the second part, it purchased from the Millers the capital stock owned by them in Kanawha Barber Supply Company, a corporation. In that instrument the Millers covenanted and agreed that after the sale they would not, by the operation of the barber and beauty supply business then owned by them in the City of Huntington, engage, directly or indirectly, or through any subterfuge whatsoever, in the barber or beauty supply business in Kanawha County, West Virginia, and that they would not sell or permit to be sold barber or beauty parlor supplies in that county. They also agreed that the violation by them of the covenant would constitute irreparable injury to the party of the second part which would justify the filing by it of a bill in equity for injunctive relief.

At the time of the making of the agreement the Millers owned or controlled the petitioner, The Huntington Barber & Beauty Supply Company, and they had also developed and established the Kanawha Barber Supply Company.

On June 21, 1941, Edlis, Inc., the purchaser from the Millers of the stock of Kanawha Barber Supply Company, under the agreement, as plaintiff, instituted the suit, in which the petitions are filed, against C. A. Miller, Willie M. Miller, and the petitioner, The Huntington Barber & Beauty Supply Company, as defendants, for the purpose of enforcing the covenant in the agreement of December 16, 1936. The petitioner and the Millers filed their separate answers to the bill of complaint and denied its charges against them of violating the covenant and also denied that the Millers owned or controlled The Huntington Barber & Beauty Supply Company at any time subsequent to January 1, 1937.

On July 29, 1942, the cause was heard upon the bill of complaint of the plaintiff, Edlis, Inc., the separate answers of the defendants, the Millers and The Huntington Barber & Beauty Supply Company, the general replication of the plaintiff to the answers of the defendants, and depositions in behalf of the plaintiff. At that time the plaintiff, by its attorneys and the defendants, by their attorney, represented to the court that the defendants consented to the entry of a decree granting injunctive relief to the plaintiff to the extent stated and the court granted the plaintiff the relief consented to by the defendants by a provision of the decree which is set forth in this language:

> "And it appearing to the Court, and the Court being of the opinion, that it is proper to grant to the plaintiff the relief prayed for to the extent consented to by the defendants, it is accordingly hereby

"Ordered, adjudged and decreed that the defendants, C. A. Miller, Willie M. Miller and Huntington Barber & Beauty Supply Company, a corporation, and each of them, as well also their respective agents and employees, be and they are hereby forever enjoined, restrained and inhibited:

"1. From soliciting for the purpose of selling; selling; or in any manner dealing in barber, beauty supplies and equipment in Kanawha County, West Virginia.

"2. From in any manner, directly or indirectly, engaging in the beauty and barber supply business in Kanawha County, or in any manner competing with plaintiff's business in said County."

The decree also adjudged that the defendants pay the court costs, omitting from such costs any attorney fee, and that the delivery by mail of a certified copy of the decree to the attorney for the defendants should be sufficient notice to them of its contents. No provision is contained in the decree which retains the case upon the docket or reserves authority in the court to modify the injunction or enter future orders or decrees. At the end of the decree, and following the words "Entry consented to" are the signatures of the attorneys for the plaintiff and the signature of the attorney for the defendants.

Since July 1, 1946, all of the outstanding capital stock of The Huntington Barber & Beauty Supply Company has been owned by the petitioners, William O. Hayden, Omar M. Hayden, Alta P. Hayden and Jack P. Hayden, who also compose its board of directors and hold and occupy all the offices of the company. The Millers do not own any stock of The Huntington Barber & Beauty Supply Company, are not employed by or connected with it in any capacity, and are either unemployed or engaged in business of a type different from that now conducted by it.

On or about August 1, 1946, without any knowledge by the petitioners, the Haydens, of the existence of the litigation between the plaintiff and the Millers and The Huntington Barber & Beauty Supply Company or of the injunction awarded in it, The Huntington Barber & Beauty Supply Company began a program of sales promotion in Kanawha County, and in order to carry it into effect employed a specialist who moved his residence from Pittsburgh to Huntington for that purpose at considerable cost and expense, and the company is obligated to pay him large sums of money at great loss because of its inability, by reason of the injunction, to use his services in that county.

The petitions, which file as exhibits and as part of their contents the bill of complaint, the separate answers, and the decrees in the suit, and the contract of December 16, 1936, allege that the purpose of the covenant in the agreement of December 16, 1936, between the Millers and the plaintiff, Edlis, Inc., was to retain the good will of Kanawha Barber Supply Company, which had been developed chiefly through the efforts of the Millers, and to prevent them from competing with the plaintiff as the purchaser of the stock of Kanawha Barber Supply Company, directly or indirectly or by the use of The Huntington Barber & Beauty Supply Company as a basis of operation for the sale of barber and beauty supplies; and that, as the Millers now have no connection with The Huntington Barber & Beauty Supply Company, have retired from that business, and that company is entirely owned by the Haydens, the situation which existed at the time of the issuance of the injunction has so changed as to justify the modification of the final decree of July 29, 1942, and the dismissal from the suit of the defendant The Huntington Barber & Beauty Supply Company.

There is no allegation in the petitions that the attorney who appeared for the defendants, and signed the consent decree for them, was without authority to represent

them, or that the entry of the decree was induced or procured by fraud upon the part of any party to the suit, or was due to mistake, surprise, or clerical error.

The prayer of the petitions is that the original suit be opened, that the decree entered July 29, 1942, be modified, that the injunctive relief granted against The Huntington Barber & Beauty Supply Company be reconsidered, that the injunction awarded against it be dissolved, and that it be dismissed from the suit.

The question presented by the certificate is, in substance, whether a court of equity having jurisdiction of the suit may, after the adjournment of the term at which it enters a final consent decree awarding a permanent injunction against defendants without expressly retaining jurisdiction of future proceedings in the cause, upon petitions filed in the case alleging change of conditions, modify the decree and dissolve the injunction as to one of the defendants without the consent of the parties to the suit.

The petitioners assert that a permanent injunction which prohibits the doing of specified acts, though a final decree, differs from the usual final judgment in that it is of a continuing nature, and that even though the judgment consists of a consent decree, the court which rendered it may at any time, in order to do equity, by proceedings in the same suit, modify or vacate the injunction.

The petitioner, The Huntington Barber & Beauty Supply Company, as already stated, is one of the defendants in the suit and the petitioners, the Haydens, as the present owners of all its capital stock, though not originally parties to the suit, are directly and adversely affected by the injunction.

In support of its demurrers the plaintiff contends: (1) that the decree which awarded the permanent in-

junction, being a final judgment, passed from the control of the court upon the expiration of the term at which it was entered and thereafter can be altered, modified or annulled, not by further proceedings in the case, but only by appeal, bill of review or original bill for fraud; (2) that, in the absence of fraud or clerical mistake, a final consent decree can not be altered or modified even during the term at which it was entered except by the consent of the parties to the suit; and (3) that the facts set out in the petition do not show that a change of conditions has occurred since the injunction was awarded which justifies its modification or dissolution.

No question is presented with respect to the right of the Haydens to intervene in the suit as successors of the Millers as stockholders of The Huntington Barber & Beauty Supply Company; and no issue of that character arises for consideration. The principal ground on which the sufficiency of the petitions is challenged by the demurrers of the plaintiff is the asserted want of jurisdiction of the circuit court to reopen the original suit or to modify the decree which awarded the permanent injunction.

The contention of the plaintiff that the facts alleged in the petitions do not show that a change of conditions has occurred since the injunction was awarded is without merit. As heretofore indicated, the allegations of the petitions in substance are that the Millers are no longer stockholders in, or employees of, or in any way connected with, The Huntington Barber & Beauty Supply Company, and are now either unemployed or engaged in business of a type different from that now conducted by that company. These averments disclose that they are not in position to compete with the plaintiff in any way, in the beauty and barber supply business in Kanawha County, or elsewhere, or to violate any provision of the written agreement of December 16, 1936, in that respect, or the terms of the injunction awarded on July 29, 1942, as they then, if so disposed, were capable

of doing. The allegations of the petitions are sufficient to show a material change in the conditions and the relations of the parties from those which existed at the time the injunction was granted, and at this stage of the proceeding, when challenged by demurrer, must be accepted as true.

The general rule in this jurisdiction is that after the entry of a final decree in a cause and the adjournment of the term at which it was entered the court can proceed no further in it by any adjudication affecting the rights or the interests of the parties; that the court has no further jurisdiction of the subject matter or of the parties in the same proceeding, in the absence of a statute conferring continuing jurisdiction; and that any subsequent decree is a nullity unless effected by one of the established methods for the review and the reversal of the final decree. See 1 Hogg's Equity Procedure, Miller, Third Edition, Section 569.

Numerous decisions of this Court hold generally, without referring to or dealing with a final decree awarding a permanent injunction, that after the expiration of the term at which a final decree adjudicating the matters involved in the suit and fixing the rights of the parties was entered, the court which entered such decree is without authority, unless authorized by statute, to modify or vacate it at any subsequent term, except to modify it for clerical errors, or to modify or vacate it for such matter as constitutes ground for a bill of review or for an original bill to impeach it for fraud in its procurement or other sufficient cause such as mistake, surprise or accident. See *Vencill v. Vencill*, 103 W.Va. 708, 138 S. E. 731; *Crim v. Davisson*, 6 W.Va. 465; *Carper v. Hawkins*, 8 W.Va. 291; *Ruhl v. Ruhl*, 24 W.Va. 279; *Core v. Strickler*, 24 W.Va. 689; *Morgan v. Ohio River Railroad Company*, 39 W.Va. 17, 19 S. E. 588; *Barbour County Court v. O'Neal*, 42 W.Va. 295, 26 S.E. 182; *Slingluff v. Gainer*, 49 W.Va. 7, 37 S.E. 771; *Childers v. Loudin*, 51 W.Va. 559, 42 S.E. 637; *Snyder v. The Middle*

*States Loan, Building and Construction Company,* 52 W. Va. 655, 44 S.E. 250; *Bank v. Ralphsnyder,* 54 W.Va. 231, 46 S. E. 206; *Law v. Law,* 55 W.Va. 4, 46 S. E. 697; *Barbour, Stedman and Herod v. Thompkins,* 58 W.Va. 572, 52 S. E. 707, 3 L. R. A. (N.S.) 715; *Dixon v. Dixon,* 73 W.Va. 7, 79 S. E. 1016; *State ex rel. Showen v. O'Brien,* 89 W.Va. 634, 109 S.E. 830; *Pugh v. Boone,* 111 W.Va. 273, 161 S. E. 227; *Weldon v. Callison,* 119 W.Va. 306, 193 S. E. 441; *Meadow River Lumber Company v. Smith,* 121 W.Va. 14, 1 S. E. 2d 169.

This Court has also frequently held, with respect to the modification of a decree entered by consent of the parties to the suit, that a decree of that character can not be modified or altered, without the consent of the parties, except to correct a clerical error, even during the term at which it was entered; that, though a consent decree may be set aside for clerical error during the term at which it was entered, on motion or by the court without motion, it can not be set aside or annulled, except by consent of the parties, by any proceedings in the same suit, even though entered by mistake, or surprise or by fraud of one of the parties; and that in such instances of mistake, surprise or fraud, a consent decree, whether interlocutory or final, can not be set aside or annulled after the expiration of the term except by an original bill filed for that purpose. *Manion v. Fahy,* 11 W.Va. 482; *Estill & Eakle v. McClintic's Adm'r.,* 11 W.Va. 399; *Rose & Co. v. Brown,* 17 W.Va. 649; *Armstrong v. Wilson,* 19 W.Va. 108; *Hunter v. Kennedy,* 20 W.Va. 343; *Morris' Adm'r v. Peyton's Adm'r,* 29 W.Va. 201, 11 S. E. 954; *Stewart v. Stewart,* 40 W.Va. 65, 20 S. E. 862; *Camden v. Ferrell,* 50 W.Va. 119, 40 S. E. 368; *Seiler v. Union Manufacturing Company,* 50 W.Va. 208, 40 S. E. 547; *Myllius v. Smith,* 53 W.Va. 173, 44 S. E. 542; *McGraw v. Trader's National Bank,* 64 W.Va. 509, 63 S. E. 398; *Dwight v. Hazlett,* 107 W.Va. 192, 147 S. E. 877, 66 A. L. R. 102; *Weldon v. Callison,* 119 W. Va. 306, 193 S. E. 441.

None of the above cited cases, those in which the decree under consideration was entered after a contest or those in which the decree was entered by consent, however, involved a decree which awarded a permanent injunction. All of them dealt with ordinary decrees or judgments which adjudicated the matters in controversy and determined the rights of the parties. No case in this jurisdiction presenting the question of the authority of the court to modify or vacate, in the same suit, a decree awarding a permanent injunction after the end of the term at which it was entered, has been cited by counsel or, after diligent search, found by this Court. This case involves that question and is a case of first impression in this jurisdiction. This Court must therefore determine whether a final decree which awards a permanent injunction is within the general rules declared and applied in the above cited cases. If a final decree which awards a permanent injunction does not differ, as to the injunction, from the ordinary final decree in which an injunction is not awarded, the necessary effect of the prior decisions of this Court, which are adhered to and approved, is to require the holding in the instant case that the Circuit Court of Kanawha County is without jurisdiction to entertain the petitions or to modify or vacate on any ground the permanent injunction awarded by the final decree entered by it on July 29, 1942.

Though the specific question of the authority of the court which entered a final decree awarding a permanent preventive injunction to modify or vacate it by subsequent proceedings in the same suit has not previously been considered or determined by this Court, that question is discussed in standard treatises and has been passed upon by federal courts, including the Supreme Court of the United States, and by appellate courts in a number of states.

In 43 C. J. S., Injunctions, Section 218, this language appears: "In the exercise of its inherent power, and without statutory authority or express retention in the de-

cree of jurisdiction to modify, as well as where the decree itself reserves the right, a court which has rendered a final decree granting a permanent injunction may open, vacate, or modify such decree where the court believes the ends of justice would be served by such action; where the continuance of the injunction is no longer warranted; where the circumstances and situation of the parties are shown to have so changed as to make it just and equitable to open, vacate, or modify the decree or inequitable, unfair, unjust, and oppressive to continue the injunction; * * *." See also 32 C. J., page 389, Section 659, and page 433, Section 740. In dealing with the same subject the text in 28 Am. Jur., Injunctions, Section 323, is in these words: "A final decree in injunction continues the life of the equity proceeding for such other relief as the court may in good conscience grant under the law. Unless otherwise provided by its terms, the injunction will remain in force as long as the court may feel that the protection which it affords is necessary to complainant's rights, or until conditions demand a modification of that protection or its entire removal. There is no doubt but that the court which renders a decree for a permanent or perpetual injunction may open or modify the same where the circumstances and circumstances of the parties are shown to have so changed as to make it just and equitable to do so, and especially where the decree itself reserves the right. The court has inherent power in this respect and may exercise it after the term in which the decree is rendered. Of course, in states in which terms in equity are not recognized, the matter cannot be controlled by term rules. Since an injunction order or decree does not create a right, its modification cannot be considered an unconstitutional deprivation of property without due process.

"As regards the causes or occasions which may call for the modification or suspension of a permanent injunction, the rule seems to be that the court, in its discretion, may always permit or order such modification

or suspension where it believes the ends of justice will be thereby served. Where the grounds and reasons for which the injunction was granted no longer exist, by reason of changed conditions, it may be necessary to alter the decree to adapt it to such changed conditions, or to set it aside altogether, as where there is a change in the controlling facts on which the injunction rests, or where the applicable law, common or statutory, has in the meantime been changed, modified, or extended. Such change in the law does not deprive the complainant of any vested right in the injunction because no such vested right exists. On application to modify the decree, the inquiry is simply whether changes since its rendition are of sufficient importance to warrant such modification. The injunction, whether right or wrong, cannot on such a hearing be impeached in its application to the conditions that existed at its making."

In the annotations to the case of *Santa Rita Oil Company v. State Board of Equalization,* 112 Mont. 359, 116 P. 2d 1012, 136 A. L. R. 757, at page 767, it is said that "The exercise of this power has been universally recognized where it was invoked upon a substantial change in the factual situation which was the basis of the original injunction." The text in 16 American and English Encyclopaedia of Law, Second Edition, page 431, is in these words: "Where an injunction can no longer subserve any useful purpose because the grounds on which it was granted no longer exist, or because of matters which have occurred since it was granted, it will be dissolved."

The power of the court which rendered a decree awarding a permanent preventive injunction to modify or vacate it, after the term at which it was entered, upon a showing that the circumstances and the situation of the parties have so changed as to make it just and equitable to modify the injunction, has been recognized, and its exercise sustained, by many appellate courts. *Ex parte Myers,* 246 Ala. 460, 21 S. 2d 113; *Jackson Grain Com-*

*pany v. Lee,* 150 Fla. 232, 7 So. 2d 143; *Federal Land Bank of Louisville v. Glendening,* Appellate Court of Indiana, 61 N. E. 2d 184; *Emergency Hospital of Easton v. Stevens,* 146 Md. 159, 126 A. 101; *Weaver v. Mississippi & Rum River Boom Company,* 30 Minn. 477, 16 N. W. 269; *Larson v. Minnesota Northwestern Electric Railway Company,* 136 Minn. 423, 162 N. W. 523; *Ladner v. Siegel,* 298 Pa. 487, 148 A. 699, 68 A. L. R. 1172; *Kelley v. Earle,* 325 Pa. 337, 190 A. 140; *Uvalde Paving Company v. Kennedy,* Court of Civil Appeals of Texas, 22 S. W. 2d 1091; *Santa Rita Oil Company v. State Board of Equalization,* 112 Mont. 359, 116 P. 2d 1012, 136 A. L. R. 757; *Sontag Chain Stores Co. v. Superior Court in and for Los Angeles County,* 18 Cal. 2d. 92, 113 P. 2d 689; *Gregory v. Crain,* 291 Ky. 194, 163 S. W. 2d 289; *Hodges v. Snyder,* 45 S. D. 149, 186 N. W. 867, 25 A. L. R. 1128; *Coca-Cola Company v. Standard Bottling Company,* 138 Fed. 2d 788. This power has also been recognized, but not exercised upon the particular facts involved, in numerous decisions in other jurisdictions. *United States v. Swift & Company,* 286 U. S. 106, 52 S. Ct 460; 76 L. ed. 999, *Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U. S. 287, 61 S. Ct. 552, 85 L. ed. 836, 132 A. L. R. 1200; *Western Union Telegraph Company v. International Brotherhood of Electrical Workers,* 133 Fed. 2d 955; *Fleming v. Miller,* 47 F. Supp. 1004; *Steinfur Patents Corporation v. Sterling Fur Dyers,* 40 F. Supp. 790; *National Popsicle Corporation v. Hughes,* 32 F. Supp. 397; *Lowe v. Prospect Hill Cemetery Association,* 75 Neb. 85, 106 N. W. 429; *McGuinn v. City of High Point,* 219 N. C. 56, 13 S. E. 2d 48; *Degenhart v. Harford,* 59 Ohio App. 552, 18 N. E. 2d 990; *Enterprise Window Cleaning Company v. Slowuta,* 273 App. 79 N. Y. S. 2d 91; *People v. Riley,* 188 Misc. 969, 64 N. Y. S. 2d 348. See also *Washington Water Power Company v. City of Coeur d'Alene,* 25 F. Supp. 795.

In the opinion in the leading and well considered case of *Ladner v. Siegel,* 298 Pa. 487, 148 A. 699, 68 A. L. R. 1172, the Supreme Court of Pennsylvania said: "The

modification of a decree in a preventive injunction is inherent in the court which granted it, and may be made, (a) if, in its discretion judicially exercised, it believes the ends of justice would be served by a modification, and (b) where the law, common or statutory, has changed, been modified or extended, and (c) where there is a change in the controlling facts on which the injunction rested." Later in the opinion the Court also said: "An injunction decree does not create a right; it protects the right of the owner to the enjoyment of his property from injurious interference by the uses of other land. The right protected is an attribute of property existing through the application of common-law principles. A decree preventing its injury does not give to the complaining party a perpetual or vested right either in the remedy, the law governing the order, or the effect of it. He is not entitled to the same measure of protection at all times and under all circumstances. A decree protecting a property right is given subject to the rules governing modification, suspension, or dissolution of an injunction. The decree is an ambulatory one, and marches along with time affected by the nature of the proceeding."

In *Emergency Hospital of Easton v. Stevens,* 146 Md. 159, 126 A. 101, in rejecting the contention that the court which granted an injunction had no power to rescind or modify its final decree after it had become enrolled, regardless of changes in the conditions or the relations of the parties occurring after the entry of the decree, the Supreme Court of Maryland said: "Certainly, where changes in the relations of the parties or the conditions upon which it is based, occurring after a final decree of the nature of that passed in this case render its further operation unreasonable, unjust, oppressive, or inequitable, the court which passed it necessarily must have the right to dissolve it, * * *. It is true, as a general principle, that a final enrolled decree will not be opened to relitigate any question dealt with in it by the court passing such a decree, but that rule does not mean that, where events have occurred

since the decree which would necessarily make the continuance of the injunction an absurdity, or unjust or oppressive, that the court which granted it could not, in a proper proceeding, change its decree to conform to the changed conditions."

In *Lowe v. Prospect Hill Cemetery Association,* 75 Neb. 85, 106 N.W. 429, the Court used this language: "The injunction in this case is purely preventive. It restrains the defendants from doing the prohibited acts, and nothing more. It prevents a threatened injury to, and encroachment of, the rights of the plaintiffs. It is not of the nature of a decree or judgment, which, when executed, has served its purpose. Its force and effect continues so long as it shall remain without modification and unvacated. * * *. We are satisfied that where a final decree has been rendered allowing a permanent injunction, as in this case, the court granting it possesses the undoubted power to either vacate or modify, when the circumstances and situation of the parties have so changed as to render such action just and equitable, and this even though the statute may not have specifically provided for the exercise of such power."

In *Sontag Chain Stores Company v. Superior Court in and for Los Angeles County,* 18 Cal. 2d 92, 113 P. 2d 689, the Supreme Court of California, in sustaining the jurisdiction of the court, which by final decree granted a permanent preventive injunction, subsequently to modify or vacate it when there has been a change in the conditions or the situation of the parties, said: "*** the decree, although purporting on its face to be permanent, is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference. Such a decree, it has uniformly been held, is always subject, upon a proper showing, to modification or dissolution by the court which rendered it. The court's power in this respect is an inherent one. Its action is determined by the facts and circumstances of each par-

ticular case, with a view to administering justice between the litigants, and it has the power to modify or vacate its decree when the ends of justice will be thereby served."

In *Santa Rita Oil Company v. State Board of Equalization,* 112 Mont. 359, 116 P. 2d 1012, 136 A.L.R. 757, the opinion contains these statements: "An injunction is merely the process by which the court enforces equity and it has not only the power but the duty to modify or annul its injunction as equity demands. A final or permanent injunction is a continuing process over which the equity court necessarily retains jurisdiction in order to do equity. And if the court of equity later finds that the law has changed or that equity no longer justifies the continuance of the injunction, it may and should free the defendant's hands from the fetters by which until then its activities have been prevented, thus leaving it free to perform its lawful duties."

In *United States v. Swift & Company,* 286 U.S. 106, 52 S. Ct. 460, 76 L. ed. 999, the Supreme Court of the United States said that in awarding a permanent injunction the court which renders it does not "abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong."; and in *Milk Wagon Drivers' Union of Chicago v. Meadowmoor Dairies,* 312 U.S. 287, 61 S. Ct. 552, 85 L. ed. 836, 132 A.L.R. 1200, the same Court employed this language: "The injunction which we sustain is 'permanent' only for the temporary period for which it may last. It is justified only by the violence that induced it and only so long as it counteracts a continuing intimidation. Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted."

The principle recognized in the above cited cases applies with equal force to a final decree awarding a

permanent injunction which has been entered by consent of the parties. "In so far as concerns the power of a court of equity to alter its decree in injunction, the result seems to be the same whether that decree has been entered after litigation or by consent, for the consent is to be read as directed towards events as they are at the time it is given and the decree entered thereon. It is not an abandonment of the right to exact revision in the future, if revision should become necessary in adaptation to events to be." 28 Am. Jur., Injunctions, Section 324.

In *United States v. Swift & Company*, 286 U.S. 106, 52 S. Ct. 460, 76 L. ed. 999, though reversing a decree of the Supreme Court of the District of Columbia modifying an earlier consent decree of the same court which enjoined the continuance of a combination in restraint of trade and commerce, the Supreme Court of the United States expressed the view that a court of equity may modify, in adaptation to changed conditions, a decree of injunction directed to events to come, even though it was entered by consent and whether the power to modify was or was not reserved by the terms of the decree. In the opinion the Court says: "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions though it was entered by consent. The power is conceded by the Government, and is challenged by the interveners only. We do not go into the question whether the intervention was so limited in scope and purpose as to withdraw this ground of challenge, if otherwise available. Standing to make the objection may be assumed, and the result will not be changed. Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. Ladner v. Siegel Co., 298 Pa. St. 487, 494, 495; 68

A. L. R. 1172, 148 Atl. 699; Emergency Hospital v. Stevens, 146 Md. 159, 126 Atl. 101; Larson v. Minn. N. W. Electric Ry. Co., 136 Minn. 423, 162 N. W. 523; Lowe v. Prospect Hill Cemetery Assn., 75 Neb. 85, 106 N. W. 429, 108 N. W. 978. The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative (Ladner v. Siegel, supra). The result is all one whether the decree has been entered after litigation or by consent (American Press. Assn. v. United States, 245 Fed. 91). In either event, a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. We reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act."

In the more recent case of *Coca-Cola Company v. Standard Bottling Company*, 138 Fed. 2d 788, the United States Circuit Court of Appeals for the Tenth Circuit affirmed a judgment of the District Court for the District of Colorado which modified an original injunction awarded by a consent decree previously entered by that Court. In the opinion the Court used this language: "We know of no case which holds that a consent decree imposing a continuing injunction deprives the court of its supervisory jurisdiction in the matter." The power of the court which entered a permanent injunction based upon a consent decree to modify the injunction, without the consent of the parties, on motion subsequently made in the same proceeding, was recognized and sustained in *Metallizing Engineering Company v. B. Simon*, 67 F. Supp. 566, and recognized, though not exercised upon the facts, in *Fleming v. Miller*, 47 F. Supp. 1004. No case to the contrary has been cited or has come to the attention of this Court.

The cited cases, in which the power of the court which entered a final decree awarding a permanent preventive injunction to modify or vacate the injunction after the expiration of the term at which the decree was rendered by subsequent proceedings in the same suit was involved, uniformly recognize the power as inherent in a court of equity and uphold its exercise by the court in subsequently modifying or vacating the injunction where there has been a change in the controlling facts which gave rise to the issuance of the original injunction. Their holdings on that question are sustained by the preponderant weight of judicial authority in this country. Apparently to the contrary are the cases of *Woffenden v. Woffenden,* 1 Ariz. 328, 25 P. 666, and *State ex rel. Caplow v. Kirkwood,* Saint Louis Court of Appeals (Mo.), 117 S. W. 2d 652, in each of which the Court expressed the view that a permanent injunction may not be vacated or modified after the expiration of the term in the same proceeding by the court which granted it when the court had jurisdiction to render the final decree which awarded the injunction. In each case, however, the attempt to vacate or modify the injunction was based, not upon a change of controlling facts which had subsequently occurred, but upon the same facts that had been determined when the injunction was awarded. In the opinion in the *Woffenden* case the Court said: "We are of the opinion that the court below erred in entertaining the motion to dissolve the injunction in this case, and in dissolving the same, as, by the record of all the proceedings, it appears conclusive that the same case had already been fully and finally heard and decided. We cannot come to other conclusions, for it is apparent that all the facts of the case were the same before the court on both hearings." In the opinion in the *Caplow* case, in referring to the motion to dissolve the previously awarded injunction, the Court used this language: "In his motion the defendant addressed himself strictly to the merits of the case as it had already been adjudicated, * * *". Of course the injunctions in those cases were not then, and the injunction in the case at bar is not now, subject to im-

peachment in their application to the conditions that existed when each injunction was awarded. *United States v. Swift & Company,* 286 U. S. 106, 52 S. Ct. 460, 76 L. ed 999. Here the effort is not to impeach the injunction or relitigate the grounds upon which it was granted but to modify or vacate it solely because of a change in the controlling facts and the relations of the parties which occurred after the injunction was awarded. For that reason the *Woffenden* and *Caplow* cases are clearly distinguishable from the case at bar.

No decision of a court of last resort in any other jurisdiction has been cited or discovered which denies the power of a court of equity to modify or vacate a permanent preventive injunction awarded by a final decree where it was satisfactorily shown that there had been a subsequent change of law or of the controlling facts upon which the original injunction rested and that the continuance of the injunction was unjust or inequitable or no longer necessary. The cases referred to from other jurisdictions which recognize and uphold the power of a court of equity subsequently to modify or vacate its own injunction when its continuance is unjust or inequitable are, of course, not of controlling force or effect or binding in authority upon this Court. They are, however, entitled to great respect and should be regarded as persuasive authority. The reasons on which they rest are sound and convincing. Application of the doctrine recognized and approved by the cases cited and discussed enables a court to do equity by subsequently modifying or vacating a permanent injunction when, due to change in the controlling facts which constituted the basis for its award in the first instance, the protection afforded by the injunction is no longer needed, or the continuance of the injunction is unjust or inequitable.

An injunction is an instrument by which courts of equity enforce their remedial and preventive decrees. *Smith v. City of Parkersburg,* 125 W. Va. 415, 24 S. E. 2d 588. It does not create a right but protects an exist-

168

ing right. *Deeds v. Gilmer*, 162 Va. 157, 174 S. E. 37; *Ladner v. Siegel*, 298 Pa. 487, 148 A. 699, 68 A. L. R. 1172; *Sontag Chain Stores Company v. Superior Court in and for Los Angeles County*, 18 Cal. 2d 92, 113 P. 2d 689. In the opinion in the case of *Deeds v. Gilmer*, 162 Va. 157, 174 S. E. 37, the Court used this language: "An injunction is granted to protect or enforce existing rights or liens. It does not create any new lien or give rise to any new substantive rights between the person to whom it is granted and the persons enjoined." In discussing the character and the effect of an injunction the United States Circuit Court of Appeals for the Seventh Circuit, in the case of *Western Union Telegraph Company v. International Brotherhood of Electrical Workers*, 133 Fed. 2d 955, said: "An injunction protects civil rights from irreparable injury, either by commanding acts to be done, or preventing their commission, and the decree in such an action is an adjudication of the facts and the law applicable thereto. The decree, however, is executory and continuing as to the purpose or object to be attained, and operates until vacated, modified, or dissolved, Ladner v. Siegel, 298 Pa. 487, 148 A. 699, 68 A. L. R. 1172; it is permanent in the sense that it enjoins a party from doing that which he has no legal or equitable right to do. When, however, its continuance is no longer warranted, equity procedure assures opportunity for modifying and adjusting it to a particular situation in accord with the settled practice of equity, Milk Wagon Drivers' Union v. Meadowmoor Dairies, 312 U. S. 287, 298, 61 S. Ct. 552, 85 L. Ed. 836, 132 A. L. R. 1200, and though a decree may be final as it relates to an appeal and all matters included or embodied in such a step, yet, where the proceedings are of a continuing nature, it is not final, Ladner v. Siegel, supra, and the injunction will be vacated or modified where the law has been changed making acts enjoined legal, Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 59 U. S. 421, 15 L. Ed. 435."

A final decree awarding a permanent preventive injunction, even though it may adjudicate the principles of the cause and fix the rights of parties at the time of its rendition, in so far as it awards an injunction, differs materially from the ordinary final decree adjudicating the principles of the cause and determining the rights of the parties, in that the permanent injunction possesses the additional quality of protecting the settled rights of a party against injurious interference in the future. *Ladner v. Siegel,* 298 Pa. 487, 148 A. 699, 68 A. L. R. 1172. In that respect the permanent injunctive feature of the decree is the executory and continuing protective process of a court of equity over which it necessarily retains jurisdiction in order to do equity. *Santa Rita Oil and Gas Company v. State Board of Equalization,* 112 Mont. 359, 116 P. 2d 1012, 136 A. L. R. 757. This distinctive characteristic of a final decree awarding a permanent preventive injunction, whether entered after litigation or by consent of the parties, distinguishes it from the ordinary final decree which merely adjudicates the principles of a cause and determines the rights of the parties but does not award an injunction, and renders inapplicable the general rules which apply to an ordinary final decree or judgment, when no injunction is awarded, and which prevent the court which entered the decree from modifying or vacating it after the adjournment of the term at which it was rendered by any subsequent proceeding in the same case. It follows that the holdings of this Court in the cases cited earlier in this opinion and the principles there enunciated and applied to the final decrees involved in those decisions do not apply to or govern a permanent preventive injunction awarded by a final decree, and on that ground those cases are distinguishable from the case at bar.

The rights of the parties, as settled and determined by a final decree which adjudicates the principles of the cause at the time of its entry and which also awards a permanent injunction to protect those rights, can not be reconsidered or litigated again, or the permanent injunc-

tion, right or wrong, in its applicaton to the conditions that existed at the time it was awarded, subjected to impeachment, after the adjournment of the term at which the decree was entered, by any further proceedings, except the established methods for correction, review and reversal of a final decree within the limits of time provided for their use or exercise. See *Emergency Hospital of Easton v. Stevens*, 146 Md. 159, 126 A. 101; *Vencill v. Vencill*, 103 W. Va. 708, 138 S. E. 731; *Snyder v. The Middle States Loan, Building and Construction Company*, 52 W. Va. 655, 44 S. E. 250; *United States v. Swift & Company*, 286 U. S. 106, 52 S. Ct. 460, 76 L. ed. 999. Those well recognized principles of law, however, do not, as to the permanent injunction awarded by a final decree, operate to prevent the court which entered it from exercising, by subsequent proceedings in the same suit after the expiration of the term at which the injunction was granted, its inherent power to modify or vacate the injunction to conform to a change of conditions or relations of the parties occurring after it was awarded.

Consideration of the texts to which reference has been made and of the cases cited from other jurisdictions, dealing with the power of the court which entered a final decree awarding a permanent injunction subsequently to modify or vacate the injunction, justifies the conclusion that such power is inherent in a court of equity and may be exercised, upon due notice, by subsequent proceedings in the same suit, to modify or vacate a final decree awarding a permanent preventive injunction after the adjournment of the term at which it was rendered whether the injunction was awarded after litigation or by consent of the parties, when it is shown that there has been a change in the conditions or the relations of the parties on which the injunction rests and that continuance of the injunction is unjust or inequitable or no longer necessary.

As the petitions allege a change in the conditions and in the relations of the parties since the award of the

permanent injunction the question certified is answered in the affirmative; and the rulings of the circuit court in overruling the demurrers are affirmed.

*Rulings affirmed.*

Fox, Judge, concurring:

I concur in the opinion in this case with some reluctance, because I fear that it opens the door to future litigation on a wide scale, in respect to matters heretofore understood to be settled by decrees recognized as final. Now, a mere change in conditions and circumstances, such as change in control or in the ownership of the stock of a corporation, will entitle a party to attempt at least to open up litigation in which an injunction has been awarded, and, in effect, rehear the case. There should, in my opinion, be some limitation on this right which, I fear, our decison does not provide. I trust that this case will not be treated as authorizing the reopening of injunction cases in general, but only where the injunction sought to be modified or vacated, is of that particular character where the passing of time, and changing conditions would warrant a resort to equity, in some other form of relief, against a decree which, in all fairness and equity, has fulfilled its function, and is no longer useful to carry out the purposes originally sought to be accomplished, but, at the same time, unduly restricts the activities of others. Speaking for myself, I shall not consider this case as a precedent for the modification or dissolution of an injunction in any other character of cases; for, in my opinion, a litigant, while entitled to his day in court, should be required to accept the result of a fair and complete hearing, and not be permitted to vex the courts with repeated appeals on substantially the same facts, such as I fear this decision will permit.

Judge Lovins concurs in this note.